IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SONOS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-131-JNR |
| | ) | |
| LINKPLAY TECHNOLOGY INC. and | ) | **DEMAND FOR JURY TRIAL** |
| LINK PLAY TECHOLOGY, INC., | ) | |
| NANJING, | ) | |
| | ) | |
| Defendants. | ) | |

**LINKPLAY USA'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
TO SONOS'S FIRST AMENDED COMPLAINT**

Defendant Linkplay Technology Inc. ("Linkplay" or "Linkplay USA"), by and through

its undersigned counsel, hereby responds to Plaintiff Sonos, Inc.'s ("Sonos") First Amended

Complaint for Patent Infringement ("Complaint") as follows[1]. Unless expressly and specifically

admitted below, Linkplay denies each and every allegation in the corresponding Complaint.

The numbered paragraphs below correspond to the numbered paragraphs of the

Complaint. Headings used in the Complaint are restated below for ease of reference, but no

admissions are thereby made, as such headings are not allegations requiring an answer.

As to the paragraph before numbered paragraph 1, Linkplay admits that Sonos files a

complaint for patent infringement against Linkplay asserting the patents-in-suit and Exhibit 1-5

purport to be copies of the patents-in-suit, but denies that the complaint has any merit.

---

[1] This Answer is by Defendant Linkplay Technology Inc. only, not by Linkplay Technology, Inc., Nanjing.  Throughout this document, "Linkplay" refers to Linkplay USA exclusively, not including Linkplay Technology, Inc., Nanjing.

**INTRODUCTION**

1.      Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

2.      Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

3.      Linkplay admits that Exhibits 6-9 purport to be articles from the alleged sources. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, so denies the same. Otherwise denied.

4.      Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

5.      Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

6.      Linkplay admits that the patents-in-suit purport to be issued by the U.S. Patent & Trademark Office.  Linkplay lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, so denies the same. Otherwise denied.

7.      Linkplay admits that Exhibits 10-11 purport to be articles from IPO and IEEE. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, so denies the same. Otherwise denied.

8.      Linkplay admits that Exhibit 12 purports to be a printed copy of a Sonos webpage.  Linkplay lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, so denies the same. Otherwise denied.

9.      Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

10.     Linkplay admits that Exhibits 15 and 16 purport to be articles from Digital Trends and What Hi-Fi.  Linkplay lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, so denies the same. Otherwise denied.

11.     Admitted that Linkplay launched the Muzo Cobblestone in 2015. Denied that this was "piggybacking off of Sonos's success." Denied that Muzo Cobblestone "ultimately failed" and denied it was discontinued around 2019, as it was discontinued in 2017. Denied that the Muzo Cobblestone "was intended to compete with Sonos's Connect product of the time." Otherwise denied.

12.     Linkplay admits that Linkplay has its independently developed line of products called "WiiM."  Linkplay further admits that WiiM Amp, WiiM Pro, WiiM Pro Plus, WiiM Mini, and WiiM Wake-up Light are among its WiiM line of products.  Linkplay further admits that Linkplay has its independently developed control app called "WiiM Home" designed for iOS, Android, MacOS, and Windows operation systems.  Linkplay admits that Linkplay has its independently developed modules, including A28, A31, A76D, A88, A97 series, A98 series, A108, and A118.  Linkplay admits Exhibits 17-18 and 87-88 purport to be printed copies of Linkplay webpages. Linkplay denies it launched WiiM "with more ambitious plans to compete directly with Sonos." Linkplay denies all the remaining allegations.

13.     Linkplay admits Exhibit 19 purports to be an article from Digital Trends and Exhibit 20 purports to be a printed copy of WiiM Forums webpage. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations on Sonos's prices, so denies the same. Admitted as to Linkplay's prices as currently charged on Amazon.com. Linkplay denies all remaining allegations.

14.     Denied.

15.     Denied.

16.     Linkplay admits Exhibit 80 purports to be a copy of Design Patent No. D959,405. Linkplay denies all remaining allegations, including to the extent Sonos alleges Linkplay infringes its Design Patent No. D959,405 or otherwise has any bearing on this suit.

17.     Denied.  Linkplay independently designed and developed its own products.

18.     Linkplay admits Exhibit 23 purports to be an article from Digital Trends. Linkplay denies all remaining allegations.  Linkplay independently designed and developed its own products.

19.     Denied.  Linkplay independently designed and developed its own products.

20.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of the screen shots included in the paragraph and presented as "example comparisons," and therefore denies them.  Linkplay denies all remaining allegations, including that the example comparisons demonstrate "copying" or "mimic"-king Sonos. Otherwise denied.

21.     Linkplay admits Exhibit 23 purports to be an article from Digital Trends. Linkplay denies all remaining allegations, including to the extent Sonos asserts that "FILL YOUR HOME WITH MUSIC" qualifies as a trademark, that Linkplay infringes any such trademark, or otherwise the slogan has any bearing on this suit.

22.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

23.     Denied.  Linkplay independently designed and developed its own products, which do not infringe the asserted patent claims.

24.     Denied.

25.     Denied.

4

26.     Linkplay admits that Exhibit 31 purports to be a printed copy of Sonos webpage and Exhibit 32 purports to be a copy of a Sonos user guide.  Linkplay lacks knowledge or information sufficient to form a belief as to the truth of Sonos's allegations that it prominently displays its patents on its website or it includes a notice of its patents in its product inserts/manuals and the Sonos app, and therefore denies them.  Linkplay denies all remaining allegations.

27.     Linkplay admits that Exhibits 27 and 30 purport to be court documents from C.A. No. 14-1330-RGA.  Linkplay further admits Exhibits 28 and 29 purport to be articles from VentureBeat and CNET, respectively.  Linkplay denies all remaining allegations.

28.     Linkplay admits that Exhibits 84 and 85 purport to be documents from Inv. No. 337-TA-1191.  Linkplay further admits Exhibit 86 purports to be an article from the New York Times.  Linkplay denies all remaining allegations.

29.     Denied.

### THE PARTIES' PRE-LITIGATION COMMUNICATIONS

30.     Admitted the parties had several in-person and electronic communications prior to Sonos initiated this suit.  Denied as to Sonos's representations and characterizations of these pre-suit communications. The purpose of the parties' pre-litigation communications from January to December 2023 was to discuss collaboration between the parties, Sonos's possible investment in Linkplay, and technical issues with Sonos and Linkplay's products. Sonos did not raise any IP issues until December 2023. Admitted that Linkplay received, by email, a letter from Sonos's counsel dated December 11, 2023 titled "Notice of Infringement of Sonos's Patents."  Denied that the "pre-litigation communications ultimately culminated in" this letter.  The letter came as a complete surprise to Linkplay, only days after Sonos mentioned its IP for the first time after

months of seemingly cooperative business communications.  Linkplay also denies that this letter provided any actual notice of infringement. Although this letter listed certain Sonos patents, it included no explanation of how each "WiiM player and Linkplay module" read on at least one claim of each of the hundreds of Sonos patents. All remaining allegations denied.

31.    Admitted that, at Sonos's request and invitation, the parties first met in person on or around January 6, 2023 at the Las Vegas Consumer Electronics Show. Denied that Sonos raised any topic Sonos's IP or infringement of it at any time during this meeting. As no such topic was discussed, Sonos's statement that Linkplay "would not agree to stop infringing" is completely false.  Otherwise denied.

32.    Admitted that in February 2023, the parties had a subsequent meeting via online conference call. Denied that infringement or Sonos IP was discussed at any time during this meeting, much less that any product discussion concerned infringement or Sonos IP.  Denied that Linkplay sought a partnership to use Sonos's IP.  Instead, Sonos sought Linkplay's proprietary technical information at the meeting to explore the potential of collaborating with Linkplay. Otherwise denied.

33.    Admitted that in September 2023, the parties met twice in person in San Francisco, and following the first meeting, Sonos brought its executives, including the Chief Product Officer and VP of Audio, to discuss extensively how the two companies could work together and Linkplay's software/hardware capabilities. Denied that infringement or Sonos IP was discussed at any time during these meetings, much less that any product discussion concerned infringement or Sonos IP. Admitted that Sonos offered to invest in Linkplay, but this proposed investment was in no context of solving any IP-infringement issue. Otherwise denied.

34.     Admitted that the parties exchanged emails, text messages, and phone calls in and around November and December 2023. Denied that infringement or Sonos IP was discussed at any time during these exchanges until early December, 2023, a week before Sonos's December 11 letter. Denied that in any of those exchanges, Sonos "specifically explained" to Linkplay any of its allegations of IP infringement, copying, and unfair competition, which it now states in the Amended Complaint.  Linkplay further incorporates by reference here its account in its counterclaims. Otherwise denied.

35.     Denied, including specifically denying that Linkplay infringed or that Sonos raised infringement or IP issues before Linkplay's launch of WiiM Amp.  Instead, Sonos suddenly and drastically changed course from the months of cooperative business discussions and replaced with this litigation, after it found Linkplay's successful WiiM Amp product on the market.

36.     Denied, including specifically denying that Linkplay infringed or that Sonos raised infringement or IP issues during the months of business communications with Linkplay until shortly before the December 11, 2023 letter.

37.     Denied, including specifically denying that Linkplay infringed or that Sonos raised infringement or IP issues during the months of business communications with Linkplay until shortly before the December 11, 2023, letter.

38.     Denied that Sonos made "months of good-faith attempts to remedy Linkplay's infringement." The months of communications were not about Sonos's IP or infringement as Sonos alleged, but instead to explore business opportunities for the parties to collaborate, at Sonos's initial request.  Admitted that Linkplay received, by email, a letter from Sonos's counsel dated December 11, 2023 titled "Notice of Infringement of Sonos's Patents," but Linkplay

denies the letter was a result of "months of good-faith attempts to remedy Linkplay's infringement." The letter came as a complete surprise to Linkplay, only days after Sonos mentioned its IP for the first time after months of cooperative business communications. Linkplay also denies that this letter provided any actual notice of infringement. Admitted that this letter listed certain Sonos patents. All remaining allegations denied. The letter included no explanation of how each "WiiM player and Linkplay module" read on at least one claim of each of the hundreds of Sonos patents.

39.     Admitted that Linkplay did not respond to Sonos's letter. All remaining allegations denied.

40.     Denied.

41.     Denied.

## THE PARTIES

42.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

43.     Admitted.

44.     Admitted solely because Linkplay USA has knowledge of this issue.

45.     Denied.

## JURISDICTION AND VENUE

46.     The allegations in this paragraph state a legal contention that requires no response. But to the extent a response is required, Linkplay admits that the Complaint supposedly sets forth claims for patent infringement but denies that Sonos's claims have merit. Linkplay admits that this Court has subject-matter jurisdiction over patent-infringement suits.

47.     For purposes of this action only, Linkplay does not challenge personal jurisdiction over Linkplay Technology Inc.  Otherwise denied.

48.     For purposes of this action only, Linkplay does not challenge personal jurisdiction over Linkplay Technology Inc.  Otherwise denied, including the allegations in footnote 2.

49.     For purposes of this action only, Linkplay does not challenge personal jurisdiction over Linkplay Technology Inc.  Admitted that Linkplay is incorporated in Delaware and is registered to do business with the State of Delaware Division of Corporations. Denied as to the allegations regarding Linkplay Technology, Inc., Nanjing ("Linkplay Nanjing"). Otherwise denied.

50.     Admitted that Linkplay USA and Linkplay Nanjing identify Lifeng Zhao as their CEO. Denied that Linkplay USA and Linkplay Nanjing identify the same U.S. headquarters or that Linkplay USA has any offices in China. Denied that Linkplay USA is the alter ego of Linkplay Nanjing and that these entities operate together as a single business entity. Otherwise denied.

51.     Denied that this Court has personal jurisdiction over Linkplay Nanjing. Otherwise denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     For purposes of this action only, Linkplay does not challenge personal jurisdiction over Linkplay Technology Inc.  Denied that this Court has personal jurisdiction over Linkplay Nanjing. Denied as to the allegations concerning Linkplay Nanjing. Otherwise denied.

56.     For purposes of this action only, Linkplay does not challenge personal jurisdiction over Linkplay Technology Inc.  Denied that this Court has personal jurisdiction over Linkplay Nanjing. Denied as to the allegations concerning Linkplay Nanjing. Otherwise denied.

57.     For purposes of this action only, Linkplay does not challenge venue under 28 U.S.C. §1391(c) and 28 U.S.C. §1400(b), but denies that venue is convenient within the meaning of 28 U.S.C. § 1404.

## PATENTS-IN-SUIT

### Background

58.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

59.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

60.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

61.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

62.     Linkplay denies the allegation that Sonos's system is "unconventional."  Linkplay lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, so denies the same. Otherwise denied.

63.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

64.     Linkplay denies the allegation that Sonos's system is "new" and "unconventional."  Linkplay lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, so denies the same. Otherwise denied.

65.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

66.     Linkplay denies the allegation that the Sonos system is "unconventional" or "provided an entirely new paradigm in home audio."  Linkplay lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, so denies the same. Otherwise denied.

**U.S. Patent No. 7,571,014**

67.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Admitted that what appear to be copies of the described materials are attached as one or more exhibits to the Complaint. Otherwise denied.

68.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

69.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

70.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

### The Allegations that Inventions Claimed in U.S. Patent No. 7,571,014 Improved Technology & Were Not Well-Understood, Routine, or Conventional

71.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

72.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

73.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

74.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

75.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

76.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

77.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Denied to the extent Sonos implies that the Court's finding on invalidity of the '014 patent applies to or binds Linkplay. Linkplay is not in privity with any parties Sonos has previously litigated against in this District on patent-infringement issues, and thus is not precluded from challenging patentability on any ground prior litigants here have raised. Otherwise denied.

78.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Denied to the extent Sonos implies that the Court's finding on invalidity of the '014 patent applies to or binds Linkplay. Linkplay is not in privity with any parties Sonos has previously litigated against in this District on patent-infringement issues, and thus is not precluded from challenging patentability on any ground prior litigants here have raised. Otherwise denied.

79.     This appears to state a legal conclusion to which no response is required. To the extent a response is required, Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

**The Allegations That Inventions Claimed in U.S. Patent No. 7,571,014 Provide Important Advantages to Multi-Room Audio Systems**

80.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

81.     Denied that Linkplay has "[r]ecogniz[ed] the advantages of Sonos's patented group volume control technology" or "incorporated Sonos's technology into their products and marketed to their customers the features that the technology enables." Linkplay lacks knowledge

or information sufficient to form a belief as to the truth of the other allegations, so denies the same. Otherwise denied.

<u>**U.S. Patent No. 9,164,532**</u>

82.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Admitted that what appear to be copies of the described materials are attached as one or more exhibits to the Complaint. Otherwise denied.

83.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

84.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

85.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

86.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

<u>**The Allegations That Inventions Claimed in U.S. Patent No. 9,164,532 Improved
Technology & Were Not Well-Understood, Routine, or Conventional**</u>

87.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

88.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

89.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

90.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

91.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

92.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

93.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

**The Allegations That Inventions Claimed in U.S. Patent No. 9,164,532 Provide Important Advantages to Multi-Room Audio Systems**

94.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

15

95. Denied that Linkplay has "[r]ecogniz[ed] the advantages of Sonos's patented grouping and synchronization technology" or "incorporated Sonos's technology into their products and marketed to their customers the features that the technology enables." Otherwise denied.

### U.S. Patent No. 9,213,357

96. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Admitted that what appear to be copies of the described materials are attached as one or more exhibits to the Complaint. Otherwise denied.

97. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

98. Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

99. Linkplay incorporates by reference and re-alleges the foregoing paragraphs 82–95. Otherwise denied.

### The Allegations That Inventions Claimed in U.S. Patent No. 9,213,357 Improved Technology & Were Not Well-Understood, Routine, or Conventional

100. Linkplay incorporates by reference and re-alleges the foregoing paragraphs 82–95. Otherwise denied.

101. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

102. Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

103.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

104.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

## The Allegations That Inventions Claimed in U.S. Patent No. 9,213,357 Provide Important Advantages to Multi-Room Audio Systems

105.     Linkplay incorporates by reference and re-alleges the foregoing paragraphs 82–95. Otherwise denied.

106.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

## U.S. Patent No. 10,541,883

107.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Admitted that what appear to be copies of the described materials are attached as one or more exhibits to the Complaint. Otherwise denied.

108.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

109.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

110.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

111.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

112.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

**The Allegations That Inventions Claimed in U.S. Patent No. 10,541,883 Improved
Technology & Were Not Well-Understood, Routine, or Conventional**

113.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

114.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

115.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

116.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

117.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

118.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

119.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

### The Allegations That Inventions Claimed in U.S. Patent No. 10,541,883 Provide Important Advantages to Multi-Room Audio Systems

120.     Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

121.     Denied that Linkplay has "[r]ecogniz[ed] the advantages of Sonos's patented playback-device-setup technology" or "incorporated Sonos's technology into their products and marketed to their customers the features that the technology enables." Linkplay lacks knowledge or information sufficient to form a belief as to the truth of the other allegations, so denies the same. Otherwise denied.

### U.S. Patent No. 10,853,023

122.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Admitted that what appear to be copies of the described materials are attached as one or more exhibits to the Complaint. Otherwise denied.

123.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

124.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

125.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

126.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

**The Allegations That Inventions Claimed in U.S. Patent No. 10,853,023 Improved Technology & Were Not Well-Understood, Routine, or Conventional**

127.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

128.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

129.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

130.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

131.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

132.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

133.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

134.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

**The Allegations That Inventions Claimed in U.S. Patent No. 10,853,023 Provide Important Advantages to Multi-Room Audio Systems**

135.    Linkplay denies all allegations in this paragraph that purport to attribute to this patent anything not stated therein. Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

136.    Denied that Linkplay has "[r]ecogniz[ed] the advantages of Sonos's patented smart line-in processing" or "incorporated Sonos's technology into their products and marketed to their customers the features that the technology enables." Linkplay lacks knowledge or

information sufficient to form a belief as to the truth of the other allegations, so denies the same. Otherwise denied.

### COUNT I: ALLEGED INFRINGEMENT OF U.S. PATENT NO. 7,571,014

137.   Linkplay incorporates by reference and re-alleges above paragraphs 1-136. Otherwise denied.

138.   Denied, and specifically denied that it committed acts of infringement.

139.   Admitted that Sonos provides a claim chart here, but denied all the allegations stated in the claim chart and the allegation that it shows infringement. Sonos bears the burden of proof to show infringement, which it has not shown with the claim chart or otherwise in its Complaint.  Otherwise denied.

140.   Denied, and specifically denied that it committed acts of infringement.

141.   Denied, and specifically denied that it committed acts of infringement.

142.   Denied, and specifically denied that it committed acts of infringement.

143.   Denied.

144.   Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

145.   Denied, and specifically denied that it committed acts of infringement.

146.   Denied, and specifically denied that it committed acts of infringement.

147.   Denied, and specifically denied that it committed acts of infringement.

148.   Denied, and specifically denied that it committed acts of infringement.

### COUNT II: ALLEGED INFRINGEMENT OF U.S. PATENT NO. 9,164,532

149.   Linkplay incorporates by reference and re-alleges above paragraphs 1-148. Otherwise denied.

150.     Denied, and specifically denied that it committed acts of infringement.

151.     Admitted that Sonos provides a claim chart here, but denied all the allegations stated in the claim chart and the allegation that it shows infringement. Sonos bears the burden of proof to show infringement, which it has not shown with the claim chart or otherwise in its Complaint.  Otherwise denied.

152.     Denied, and specifically denied that it committed acts of infringement.

153.     Denied, and specifically denied that it committed acts of infringement.

154.     Denied, and specifically denied that it committed acts of infringement.

155.     Denied.

156.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

157.     Denied, and specifically denied that it committed acts of infringement.

158.     Denied, and specifically denied that it committed acts of infringement.

159.     Denied, and specifically denied that it committed acts of infringement.

160.     Denied, and specifically denied that it committed acts of infringement.

**COUNT III: ALLEGED INFRINGEMENT OF U.S. PATENT NO. 9,213,357**

161.     Linkplay incorporates by reference and re-alleges above paragraphs 1-160. Otherwise denied.

162.     Denied, and specifically denied that it committed acts of infringement.

163.     Admitted that Sonos provides a claim chart here, but denied all the allegations stated in the claim chart and the allegation that it shows infringement. Sonos bears the burden of proof to show infringement, which it has not shown with the claim chart or otherwise in its Complaint.  Otherwise denied.

164.    Denied, and specifically denied that it committed acts of infringement.

165.    Denied, and specifically denied that it committed acts of infringement.

166.    Denied, and specifically denied that it committed acts of infringement.

167.    Denied.

168.    Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

169.    Denied, and specifically denied that it committed acts of infringement.

170.    Denied, and specifically denied that it committed acts of infringement.

171.    Denied, and specifically denied that it committed acts of infringement.

172.    Denied, and specifically denied that it committed acts of infringement.

**COUNT IV: ALLEGED INFRINGEMENT OF U.S. PATENT NO. 10,541,883**

173.    Linkplay incorporates by reference and re-alleges above paragraphs 1-172. Otherwise denied.

174.    Denied, and specifically denied that it committed acts of infringement.

175.    Admitted that Sonos provides a claim chart here, but denied all the allegations stated in the claim chart and the allegation that it shows infringement. Sonos bears the burden of proof to show infringement, which it has not shown with the claim chart or otherwise in its Complaint.  Otherwise denied.

176.    Denied, and specifically denied that it committed acts of infringement.

177.    Denied, and specifically denied that it committed acts of infringement.

178.    Denied, and specifically denied that it committed acts of infringement.

179.    Denied.

180.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

181.     Denied, and specifically denied that it committed acts of infringement.

182.     Denied, and specifically denied that it committed acts of infringement.

183.     Denied, and specifically denied that it committed acts of infringement.

184.     Denied, and specifically denied that it committed acts of infringement.

**COUNT V: ALLEGED INFRINGEMENT OF U.S. PATENT NO. 10,853,023**

185.     Linkplay incorporates by reference and re-alleges above paragraphs 1-184. Otherwise denied.

186.     Denied, and specifically denied that it committed acts of infringement.

187.     Admitted that Sonos provides a claim chart here, but denied all the allegations stated in the claim chart and the allegation that it shows infringement. Sonos bears the burden of proof to show infringement, which it has not shown with the claim chart or otherwise in its Complaint.  Otherwise denied.

188.     Denied, and specifically denied that it committed acts of infringement.

189.     Denied, and specifically denied that it committed acts of infringement.

190.     Denied, and specifically denied that it committed acts of infringement.

191.     Denied.

192.     Linkplay lacks knowledge or information sufficient to form a belief as to the truth of these allegations, so denies the same. Otherwise denied.

193.     Denied, and specifically denied that it committed acts of infringement.

194.     Denied, and specifically denied that it committed acts of infringement.

195.     Denied, and specifically denied that it committed acts of infringement.

196.    Denied, and specifically denied that it committed acts of infringement.

## SONOS'S PRAYER FOR RELIEF

Linkplay denies that Sonos is entitled to any of the prayed-for relief. Otherwise denied.

## ADDITIONAL DEFENSES

As further answer and as additional defenses, but without assuming any burden that it would not otherwise have or admitting that it bears the burden of proof with respect to any of the following, Linkplay asserts the following defenses by alleging as follows. Linkplay reserves all rights to allege additional defenses that become known through the course of discovery.

## FIRST DEFENSE
### (Failure to State a Claim)

The Complaint fails to state a claim on which relief can be granted.

## SECOND DEFENSE
### (Noninfringement)

Linkplay has not infringed and does not infringe, directly or indirectly, any claim of any of the asserted patents, whether literally or under the doctrine of equivalents, and is not liable for infringement of any valid and enforceable claim of the patents-in-suit.

## THIRD DEFENSE
### (Invalidity)

One or more of the claims of the patents-in-suit are invalid for failure to satisfy the conditions of patentability set forth in 35 U.S.C. § 1 *et seq.*, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112, the non-statutory doctrine of obviousness-type double-patenting, improper inventorship, and the rules, regulations, and laws pertaining thereto.

**FOURTH DEFENSE**
**(Lack of Standing)**

Sonos's claims and prayer for relief are barred because Sonos does not have standing to bring its claims including, but not limited to, that Sonos does not own the alleged invention(s) disclosed in the patents-in-suit.

**FIFTH DEFENSE**
**(Lack of Notice)**

Linkplay did not receive adequate notice of the asserted patents, and thus lacks knowledge of infringement, before service of the original Complaint in this action. For at least this reason, Linkplay could not have, and did not, indirectly infringe or willfully infringe any claim of the asserted patents before service of the original Complaint. Linkplay reserves all rights to move for appropriate relief, including that Sonos's indirect infringement and willful infringement claims are not cognizable as a matter of law because Linkplay did not have the requisite knowledge due to lack of notice of the asserted patents.

**SIXTH DEFENSE**
**(Limitation of Damages)**

Sonos's claims and prayer for relief are barred in whole or in part by 35 U.S.C. §§ 286, 287, and/or 288. Section 287 includes a failure to mark and/or failure to provide actual notice of alleged infringement.

**SEVENTH DEFENSE**
**(Equitable Estoppel)**

Sonos's claims are precluded or otherwise estopped under the doctrine of equitable estoppel.  Linkplay incorporates by reference and realleges paragraphs 31-38 of the Answers above and paragraphs 11-46 of the Counterclaims as if they are fully set forth here.  Sonos has had a history of first reaching out to potential technology partners for help and then suing them for patent infringement after learning more about the intricate details of their products and

technologies. *See Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *10–11 (N.D. Cal. Oct. 6, 2023).  Here, Sonos requested to meet with Linkplay to explore business opportunities to work together, including asking Linkplay to provide its superior technology solutions to help improve Sonos's products, integrating Linkplay's products with Sonos's products, and for Sonos to make an investment on of acquisition of Linkplay.  Nearly a year of extensive communications between the parties never centered on Sonos's IP or Linkplay's alleged infringement, until a sudden and dramatic change of course in December 2023 when Sonos repaid Linkplay's assistance and good-faith collaboration with a cease-and-desist letter sent on December 11, 2023, just prior to the holidays and this lawsuit a few weeks later, just before the lunar new year.  Sonos's misleading conduct toward Linkplay led Linkplay to reasonably infer that Sonos does not intend to enforce its patents against Linkplay and Linkplay relied on that inference. Due to its reliance, Linkplay will be materially prejudiced if Sonos is allowed to proceed with its claims.

### EIGHTH DEFENSE
### (Waiver)

On information and belief, Sonos's claims and prayer for relief are barred by the doctrine of waiver.  Linkplay incorporates by reference and realleges paragraphs 31-38 of the Answers above and paragraphs 11-46 of the Counterclaims as if they are fully set forth here.  Sonos requested to meet with Linkplay to explore business opportunities to work together, including asking Linkplay to provide its superior technology solutions to help improve Sonos's products, integrating Linkplay's products with Sonos's products, and for Sonos to make an investment on or acquisition of Linkplay.  Nearly a year of extensive communications between the parties never centered on Sonos's IP or Linkplay's alleged infringement, until a sudden and dramatic change of course in December 2023 when Sonos repaid Linkplay's assistance and good-faith

collaboration with a cease-and-desist letter sent on December 11, 2023, just prior to the holidays and this lawsuit a few weeks later, just before the lunar new year.  Sonos's misleading conduct toward Linkplay led Linkplay to reasonably infer that Sonos does not intend to enforce its patents against Linkplay and Linkplay relied on that inference.  Sonos's conduct was so inconsistent with an intent to enforce its rights to induce a reasonable belief that such right has been relinquished, and thus falls within the doctrine of waiver.

## NINTH DEFENSE
### (License, Exhaustion)

To the extent Sonos's infringement allegations relate to products or services that were provided by or for any licensee of the patents-in-suit and/or provided to Linkplay by or through a licensee of the patents-in-suit or under a covenant not to sue, whether express or implied, Sonos's claims are barred.

## TENTH DEFENSE
### (Inequitable Conduct)

On information and belief, Sonos's claims and prayer for relief are barred by the doctrine of inequitable conduct. Sonos has previously been found by a Court to have misled and deceived the USPTO in the prosecution of its patents. *Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *27 (N.D. Cal. Oct. 6, 2023) ("Sonos claimed the priority date of the 2006 provisional application because the inventive subject matter was ostensibly disclosed by that application. But here, this subject matter could not have been disclosed until 2019, when the reappropriated sentence was ***strategically and deceptively*** added to the specification of the patents in suit." (emphasis added)). On information and belief, Sonos similarly committed strategic and deceptive acts to mislead the United States Patent and Trademark Office in the prosecution of one or more of the asserted patents. Also, Sonos has previously been found to

have unfairly captured claim scope in obtaining patents. *Id.* at *19 ("[T]his order finds and concludes, by clear and convincing evidence, that Sonos was guilty of unreasonable and inexcusable delay in prosecution of the patents in suit, to the extreme prejudice of Google and others."). On information and belief, Sonos has also inappropriately used the patent-prosecution system to unfairly capture claim scope for the asserted patents in this case. Further, during prosecution, Sonos intentionally "buried" the relevant prior art by over-disclosing non-prior art and/or nonrelevant prior art, citing to the USPTO as many as eighteen pages of references. *See PACT XPP Schweiz AG v. Intel Corp.*, C.A. No. 19-01006-JDW, D.I. 399 at 14–16 (D. Del. March 24, 2023) (denying summary judgment of no inequitable conduct and holding that "burying" is a recognized theory of inequitable conduct under *Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995)). During the prosecution of the asserted patents, many of these disclosed references have publication dates later than the filing date of the earliest non-provisional, bringing their relevance into question.

## ELEVENTH DEFENSE
### (Prosecution Laches)

On information and belief, Sonos's delay in prosecuting the asserted patents was unreasonable and inexcusable under the totality of circumstances, resulting in prejudice to Linkplay and/or others during the period of delay. Courts have found delays greater than eight years to be unreasonable for purposes of prosecution laches. *Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *17 (N.D. Cal. Oct. 6, 2023) (finding Sonos patents unenforceable due to prosecution laches) (determining that Federal Circuit and Supreme Court cases on prosecution laches found delays greater than eight years unreasonable). Four out of the five asserted patents were filed as continuing patent applications, between eight and fifteen years after the first priority application. Sonos then inappropriately used the continuation patent

practice to unfairly capture claim scope for the asserted patents. This is consistent with how Sonos has also been found to inappropriately use the patent-prosecution system to unfairly capture claim scope. *Id.* at *19 ("[T]his order finds and concludes, by clear and convincing evidence, that Sonos was guilty of unreasonable and inexcusable delay in prosecution of the patents in suit, to the extreme prejudice of Google and others.").

## TWELTH DEFENSE
### (Prosecution-History Estoppel)

On information and belief, due to admissions and statements made to the United States Patent and Trademark Office during the prosecution of the applications that resulted in the asserted patents or related patent applications, Sonos is estopped from construing a valid and enforceable claim, if any, of the asserted patents as infringed literally or under the doctrine of equivalents by the accused products.

## THIRTEENTH DEFENSE
### (Unclean Hands)

On information and belief, Sonos's claims and prayer for relief are barred by the doctrine of unclean hands. Sonos misled and deceived Linkplay in its dealings with Linkplay before filing this Complaint, as further described *infra* in the counterclaims section of this pleading. Linkplay incorporates by reference and realleges paragraphs 31-38 of the Answers above and paragraphs 11-46 of the Counterclaims as if they are fully set forth here.  Sonos has a history of first reaching out to potential technology partners and then suing them for patent infringement after learning more about the intricate details of their products. *Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *10–11 (N.D. Cal. Oct. 6, 2023). Sonos has also inappropriately used the patent prosecution system to unfairly capture claim scope for the asserted patents, for example, through continuation patent practice. Sonos has previously been found to have done so in obtaining patents. *Id.* at *19 ("[T]his order finds and concludes, by clear

and convincing evidence, that Sonos was guilty of unreasonable and inexcusable delay in prosecution of the patents in suit, to the extreme prejudice of Google and others."). On information and belief, Sonos strategically deceptively committed acts to mislead the United States Patent and Trademark Office in the prosecution of one or more of the asserted patents. Sonos has been found to have deceived the patent office in the prosecution of its patents. *Id.* at *27 ("Sonos claimed the priority date of the 2006 provisional application because the inventive subject matter was ostensibly disclosed by that application. But here, this subject matter could not have been disclosed until 2019, when the reappropriated sentence was ***strategically and deceptively*** added to the specification of the patents in suit." (emphasis added)).

## RESERVATION OF ALL DEFENSES

Linkplay alleges that it may have other separate and additional defenses of which it is not presently aware and hereby reserves the right to raise such defenses by amendment of its Answer, including to conform to its proofs at trial. Linkplay therefore reserves all defenses under the Federal Rules of Civil Procedure, including Rule 8(c), the Patent Laws of the United States and any other and additional defenses, at law or in equity, that are now or may become available or appear during, or as a result of, discovery in this action.

## COUNTERCLAIMS

For its counterclaims against Plaintiff Sonos, Inc. ("Sonos"), Counterclaim Plaintiff Linkplay Technology Inc. ("Linkplay") alleges as follows:

## INTRODUCTION

## Linkplay's History and Products

1.      Linkplay was founded in 2014 with the goal of bringing wireless streaming technology to smart audio and smart home products, making it easy to use and universally accessible to enhance people's lives.

2.      Over the past decade, in service of that goal, Linkplay has become one of the world's most innovative companies in the audio and smart-home industries.

3.      Linkplay has been at the forefront of smart-audio and smart-home solutions, offering voice control, audio streaming, intuitive companion apps, and cloud services helping to lead global brands to revolutionize smart speakers, soundbars, and smart home devices.

4.      Linkplay's acclaimed WiiM series, featuring the WiiM Mini, Pro, and Pro Plus audio streamers, along with the groundbreaking WiiM Amp, smartly upgrades a legacy audio device into connected, intelligent devices, allowing people to enjoy enhanced, high-fidelity listening.

5.      Linkplay remains dedicated to innovating accessible smart-audio and home products, leveraging the latest in connectivity, voice technology, and cloud services to enrich homes globally.

6.      The Consumer Electronics Society (CES) has widely acknowledged Linkplay's commitment to product innovation, with the WiiM Pro Plus clinching the CES Innovation Award 2024 for its exceptional design and engineering in consumer technology. *See* Ex. A, *available at* https://www.ces.tech/innovation-awards/honorees/2024/honorees/w/wiim-pro-plus.aspx.

7.      Linkplay products consistently set the benchmark for excellence. The New York Times Wirecutter lauded the WiiM Amp as among "the best stereo amplifiers and receivers

under $300." *See* Ex. B, *available at* https://www.nytimes.com/wirecutter/reviews/best-mini-stereo-amplifier/.  CNET named the WiiM Pro the "Best Music Streamer 2023." *See* Ex. C, *available at* https://www.cnet.com/tech/home-entertainment/wiim-pro-review-the-best-streamer-for-music-fans/. And What-HiFi honored the WiiM Pro Plus as the "Best Music Streamer Under £300, 2023." *See* Ex. D, *available at* https://www.whathifi.com/awards/best-music-streamers-2023; Ex. E, *available at* https://www.whathifi.com/reviews/wiim-pro-plus.

8.     Some industry publications have compared certain Sonos products directly to certain Linkplay products.

9.     Industry publications comparing the Linkplay WiiM Pro and the Sonos Port have lauded Linkplay's product as superior in many respects. For example, the Digital Trends article quoted by Sonos in its complaint (Ex. F, *available at* https://www.digitaltrends.com/home-theater/wiim-pro-review), made the following observations in its comparison of these products:

- "Both devices have indicator lights on the front for power, but the WiiM Pro also features touch controls for volume (which can be swapped for track skipping), playback, and presets."

- "[With the WiiM Pro, y]ou get an optical input, plus an optical and coaxial digital set of outputs. The Port only has a single coaxial digital output . . . . The WiiM Pro, by contrast, is festooned with wireless options. You can use the WiiM app to access a variety of streaming services, or AirPlay, Bluetooth, and Chromecast Audio — the latter two options will be especially useful to Android users — as well as Spotify Connect/Tidal Connect."

- "Sonos has been criticized for not offering any kind of headphone listening experience, which makes the WiiM Pro all the more impressive. It supports Bluetooth as an output — a feature that's very rare in the wireless multiroom universe."

- "Sonos supports a wide variety of both lossy and lossless formats, but it has a hard limit on resolution that die-hard audiophiles may find annoying: audio quality can't exceed 24-bit/48kHz… The WiiM Pro doesn't quite tick all of the audiophile boxes (it doesn't decode DSD), but it comes very close, with support for hi-res lossless ALAC, APE, FLAC, and WAV, up to 24-bit/192kHz, in addition to the usual lossy suspects, MP3, AAC, WMA, and OGG. There's even beta-level support for the MQA format, which Tidal uses to deliver its top-tier Masters tracks, something that Sonos does not support."

- "Cleverly, once grouped, the WiiM app lets you decide if you want each device to play the full stereo stream, or if each device should play just one channel. Sonos only lets you create these kinds of stereo pairs if both devices are identical."

10.     Industry publications comparing Linkplay WiiM Amp and Sonos Amp have lauded Linkplay's product as superior in many respects. For example, the Digital Trends article quoted by Sonos in its complaint (Ex. G, *available at* https://www.digitaltrends.com/home-theater/wiim-amp-review) made the following observations in its comparison of these products:

- The 5-way binding posts accept almost any method including banana plugs and bare wires. Since it's possible (though not an official feature) to run two sets of 8-ohm speakers (4 speakers in total), it's nice to be able to run one set via banana plugs and another set as bare wire — the Sonos Amp can only handle one of these connections at a time."

- "But if you're extremely picky about maximizing sound quality, WiiM's platform is technically superior."

- "Take the included Bluetooth remote, for instance. It's easy to overlook because most folks will use the WiiM app to interact with the Amp. And yet, it not only turns the Amp into a full-fledged Amazon Alexa smart speaker, but it also gives everyone in the house (and visitors too) an easy, familiar, and app-free way to control important functions like volume, muting, playback, and source selection, including access to the first four of 12 available presets. That's a lot of extra value that the Sonos Amp can't match."

- "Speaking of streaming over wireless connections, the WiiMAmp is astonishingly flexible … this is one area where the Sonos Amp feels decidedly limited."

- "I'm guessing the generous selection of EQ presets will get you most of the way there. That's something the Sonos Amp doesn't offer. Its only tone controls are separate bass and treble sliders."

- "As you can see, they're all more expensive than the WiiM Amp, and that extra investment doesn't always mean more or better features and performance. For its price, the WiiM Amp provides an unbeatable value."

**<u>The Parties' Pre-Litigation Dealings</u>**

11.     The parties had extensive dealings before the filing of this lawsuit.

12.     These dealings began over a year before this suit was filed, at Sonos's request and invitation.

13.     During the course of these dealings, Sonos repeatedly asked Linkplay for technical assistance. Sonos conceded that its products did not perform as well as Linkplay's in certain areas.

14.     During these dealings and communications with Linkplay, Sonos performed a tremendous amount of analysis to understand Linkplay's technology, products, and team.   Based on such analysis, Sonos repeatedly expressed interest to collaborate with Linkplay technically as working partners and also expressed interest to make an investment in or acquire Linkplay to share Linkplay's success.

15.     The content of these dealings and the communications exchanged show Sonos acknowledged that Linkplay independently innovated superior products instead of copying Sonos's.  Sonos's dealings and communications with Linkplay directly contradict the implications in Sonos's complaint that Linkplay merely copied Sonos and/or is incapable of independent innovation.

16.     These dealings began around January 2023, when Mike Tatum, Sonos VP of Corporate Strategy and M&A, contacted Jade Wu, Linkplay's then Chief Business Officer. Tatum asked Wu for a meeting at the 2023 CES expo held in Las Vegas, Nevada.

17.     Henry Jeong, Linkplay VP of Global Sales, responded and agreed to the meeting.

18.     Jeong met Tatum and Eddie Lazarus, Sonos's then CFO and Chief Legal Officer in January 2023. This January 2023 meeting explored how Sonos and Linkplay could cooperate. Tatum and Lazarus did not raise Sonos's IP or any alleged infringement thereof.

19.     The parties entered into an NDA on February 7, 2023. The NDA generally covered information exchanged "[i]n connection with our mutual consideration of a possible negotiated transaction (the "Transaction") between Sonos and [Linkplay]."

20.     In February 2023, the parties had a subsequent meeting via online conference call. Attending for Linkplay were Jeong and CEO Lifeng Zhao. Attending for Sonos were its SVP of software Rebecca Zavin and other technical people.  Sonos asked many technical questions about Linkplay's products and its software designs. Sonos noted that the Linkplay WiiM Pro had fast synchronization.  Sonos did not raise Sonos's IP or any alleged infringement thereof at the meeting.

21.     Sonos asked Jeong about his ideas for inter-company cooperation. Jeong offered to help Sonos integrate Sonos API into Linkplay or Linkplay technology into Sonos products.

22.     Sonos solicited suggestions for improving its portable devices. Sonos also admitted that its software was "heavy" and products too costly.

23.     In September 2023, Sonos asked for another meeting, this time to be held in person in San Francisco, California. Eventually, two meetings between the companies occurred at Sonos's San Francisco office in September 2023, one on September 14 and another on September 25.

24.     Zhao, Jeong, and Steven Willenborg attended these meetings for Linkplay. Among the Sonos employees attending were Mike Tatum, its Chief Product Officer (believed to be Maxime Bouvat-Merlin), product managers, and senior marketing managers. No employees from any legal department were present at this meeting.

25.     At these San Francisco meetings, Sonos raised the possibility of acquiring Linkplay or investing in the company and asked Linkplay to disclose its financial status and investors.  Sonos did not raise Sonos's IP or any alleged infringement thereof at these meetings.

26.     Also at these meetings, Sonos again sought technical assistance from Linkplay regarding Sonos's products. On this point, it had brought Jim Hong, a product lead at Sonos living in Seattle, into the conversation after the meetings to discuss the technical matters.

27.     The discussions on possible inter-company collaboration continued via email into November 2023. Tatum stated on November 21, 2023 that Hong had left Sonos. But on information and belief, Hong did not actually leave Sonos.

28.     On November 21, 2023, Sonos's Tatum asked for a follow-up meeting. The parties exchanged cordial emails through December about possible cooperation and investment. On December 1, Tatum claimed that "our team I believe has come up with an attractive option," presumably regarding cooperation and/or investment.

29.     On or around December 4, 2023, Sonos and Linkplay held a call about cooperation and/or investment. Sonos again asked for Linkplay's financial information. Tatum, for that time, mentioned that Sonos's legal team was investigating Linkplay's products against Sonos's patents but represented that Sonos still wanted to collaborate with Linkplay.

30.     Tatum also mentioned that Sonos wanted Linkplay to raise the prices on its products. He suggested that Linkplay raise its prices to the $400–500 range that Sonos was selling at.

31.     Sonos proposed to continue negotiating terms of a business deal, over the holidays, for Linkplay to be part of the "exclusive" "Work with Sonos" developer program and

integrate Linkplay's products with Sonos, and for Sonos to make an investment in Linkplay. Sonos suggested that the discussions would continue at least to mid-January 2024.

32.     However, on Monday, December 11, 2023, to Linkplay's surprise, Sonos sent Linkplay a cease-and-desist letter alleging that Linkplay was infringing a number of Sonos's patents. The parties ceased having any direct written or oral communications after that.

33.     While Linkplay engaged in extensive technical and business discussions with Sonos in good faith and went out of its way to help Sonos improve its products, Sonos seems to think no good deed should go unpunished. In exchange for the assistance Sonos received from Linkplay to help improve Sonos's products and the technical and financial information shared by Linkplay, Sonos now sues Linkplay asking for damages and an injunction.

34.     In this respect, Linkplay is much like Google, another company from which Sonos sought technical assistance to improve its products before suing for damages and injunctive relief with the benefit of the confidential technical information it received during its purported efforts to collaborate. *See Sonos, Inc. v. Google LLC*, No. 2:20-cv-00169-JAK, Doc. 29, ¶¶ 6–13 (C.D. Cal. March 2, 2020) (Answer by Google) (noting how Sonos approached Google for technical assistance and collaboration before suing Google for patent infringement).

35.     But there is no basis for Sonos's claims. The technologies Linkplay uses were all independently developed by Linkplay. They are not technologies Linkplay took from Sonos, and they are not the technologies described in the patents Sonos asserts.

36.     The asserted patents describe older technologies–not the advanced technologies Linkplay uses. In fact, the technologies described in Sonos's asserted patents were not even first developed by Sonos.

37.     The ideas in those patents were not new; they were already known in the field and were obvious and dated by the time Sonos applied for each of these asserted patents.

38.     The technologies in these asserted patents do not reflect the design of modern wireless audio devices.

39.     Indeed, it appears Sonos itself does not even use these technologies in its modern devices.

40.     During the course of these pre-suit inter-company discussions, Sonos repeatedly emphasized that it sought to collaborate with Linkplay. Indeed, Sonos specifically discussed the possibility of going further and investing in Linkplay or acquiring it outright.

41.     Based on these representations from Sonos, Linkplay shared confidential technical and financial information with Sonos.

42.     Sonos's receipt of this confidential information helped or will help it in this lawsuit against Linkplay.

43.     During the course of these pre-suit inter-company discussions, Sonos mentioned it had some concerns about Linkplay's use of Sonos's intellectual property, but assured Linkplay its focus was on possible collaboration with or investment in Linkplay.

44.     Based on this representation, Linkplay reasonably believed that Sonos had no intention of bringing a patent-infringement lawsuit, such as this one, against Linkplay, much less one that would benefit from the confidential technical and financial information Sonos had received from Linkplay while the companies were discussing collaboration or investment.

45.     Linkplay initially believed that Sonos had held these discussions entirely in good faith.

46.     Sonos did not conduct all of these discussions in good faith.

## PARTIES

47.     Linkplay Technology Inc. is a Delaware corporation but operates out of its principal place of business at 8000 Jarvis Ave., Suite 130, Newark, CA 94560.

48.     On information and belief and as alleged by itself, Counterclaim Defendant Sonos is a Delaware corporation with its principal place of business at 614 Chapala Street, Santa Barbara, California 93101.

## JURISDICTION AND VENUE

49.     Linkplay incorporates by reference paragraphs 1–48 above as if fully set forth herein.

50.     Counterclaim Counts One through Fifteen (hereafter, Counterclaims 1–15), plead in more detail below, arise under the patent laws of the United States, Title 35, United States Code, in which Linkplay seeks relief under the Declaratory Judgment Act. The jurisdiction of this Court is proper under at least 35 U.S.C. § 271 *et seq.*, 15 U.S.C. § 1051 *et seq.*, and 28 U.S.C. §§ 1331, 1338, 1367, and 2201-02.

51.     Sonos has consented to the personal jurisdiction of this Court with respect to Counterclaims 1-15 at least by commencing its action for patent infringement in this District, as set forth in its complaint. This Court further has general personal jurisdiction over Sonos as to all Counterclaims because, upon information and belief and as alleged by Sonos, Sonos is incorporated in Delaware. The exercise of personal jurisdiction over Sonos with respect to these Counterclaims would not offend traditional notions of fair play and substantial justice.

52.     Based at least on Plaintiff's filing of this action, venue for Counterclaims 1–15 is proper, though not necessarily convenient, in this District under at least 28 U.S.C. §§ 1391 and 1400.

## **COUNTERCLAIMS**

53.     Linkplay incorporates by reference above paragraphs 1–52 as if fully set forth herein.

54.     Counterclaims 1-15 concern the following five patents which Sonos has asserted against Linkplay ("patents-in-suit"):

- 7,571,014 (the "'014 patent")
- 9,164,532 (the "'532 patent")
- 9,213,357 (the "'357 patent")
- 10,541,883 (the "'883 patent")
- 10,853,023 (the "'023 patent")

55.     As further described below, Linkplay seeks a declaration that each of these patents is (A) not infringed, (B) invalid, and (C) unenforceable.

## **COUNT ONE:**
## **DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '014 PATENT**

56.     Linkplay has not infringed and does not infringe the '014 patent, either directly (either literally or under the doctrine of equivalents), contributorily, or by inducement, and is not liable for infringement of any valid and enforceable claim of the '014 patent.

57.     Sonos asserted U.S. Patent Number 8,588,949 (the '949 patent), also directed to volume control of group zone players and claiming priority to the '014 patent, against Google in ITC Investigation No. 337-TA-1191.  The International Trade Commission, in its final determination, found that Google's certain products do not infringe the '949 patent. ITC Investigation No. 337-TA-1191, Commission Opinion. Sonos did not appeal this decision. *Sonos, Inc. v. ITC*, 2022-1421, 2024 WL 1507605 (Fed. Cir. 2024). The '014 patent recites claim limitations similar to those of the '949 patent.  Linkplay's accused products do not directly infringe the '014 patent for at least the reasons Google's products were found not to infringe the

'949 patent and because the different technology Linkplay independently developed and implemented in its products.

58.     Linkplay's accused products do not indirectly infringe the '014 patent at least because there is no underlying direct infringement, which is required for any possible finding of indirect infringement. *Limelight Networks, Inc., v. Akamai Technologies, Inc.*, 134 S. Ct. 2111, 2117 (2014) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 341 (1961)) (finding indirect infringement liability can only arise "if, but only if, there is direct infringement"). Linkplay also does not actively induce any direct infringement or contribute to any direct infringement as the accused products have substantial noninfringing use including not implementing multi-room playback and are not especially made or especially adapted for use in an infringement. 35 U.S.C. § 271(b)-(c).

59.     Sonos is not entitled to relief of any claim in the Complaint for at least the reasons in this Answer and Counterclaims, including the affirmative defenses set forth above.

60.     Based on Sonos's filing of this action and at least Linkplay's second defense, an actual controversy has arisen and now exists between the parties on whether Linkplay infringes the '014 Patent.

61.     Absent a declaration of non-infringement, Sonos will continue to assert infringement against Linkplay and others, including Linkplay's customers, in violation of the law and contrary to the public policy of the United States, and thereby will continue to cause Linkplay irreparable injury and damages.

62.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et *seq.*, Linkplay requests a declaration that Linkplay has not infringed (directly or indirectly) any valid and enforceable claim of this patent, either literally or under the doctrine of equivalents.

**COUNT TWO:**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '532 PATENT**

63.     Linkplay has not infringed and does not infringe the '532 patent, either directly (either literally or under the doctrine of equivalents), contributorily, or by inducement, and is not liable for infringement of any valid and enforceable claim of the '532 patent.

64.     Sonos asserted U.S. Patent Number 9,195,258 (the '258 patent), also directed to synchronization of group zone players and claiming to a same chain of priority applications as the '532 patent, against Google in ITC Investigation No. 337-TA-1191.  The International Trade Commission, in its final determination, found that Google's certain products do not infringe the '258 patent.  ITC Investigation No. 337-TA-1191, Commission Opinion.  Sonos appealed this decision to the Federal Circuit and the Federal Circuit affirmed the non-infringement of Google's products.  Sonos, Inc. v. ITC, 2022-1421, 2024 WL 1507605 (Fed. Cir. 2024).  The '532 patent recites claim limitations similar to those of the '258 patent.  Linkplay's accused products do not directly infringe the '532 patent for at least the reasons Google's products were found not to infringe the '258 patent and because the different technology Linkplay independently developed and implemented in its products.

65.     Linkplay's accused products do not indirectly infringe the '532 patent at least because there is no underlying direct infringement, which is required for any possible finding of indirect infringement.  *Limelight Networks, Inc., v. Akamai Technologies, Inc.*, 134 S. Ct. 2111, 2117 (2014) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 341 (1961)) (finding indirect infringement liability can only arise "if, but only if, there is direct

44

infringement").   Linkplay also does not actively induce any direct infringement or contribute to any direct infringement as the accused products have substantial noninfringing use including not implementing multi-room playback and are not especially made or especially adapted for use in an infringement.  35 U.S.C. § 271(b)-(c).

66.     Sonos is not entitled to relief of any claim in the Complaint for at least the reasons in this Answer and Counterclaims, including the affirmative defenses set forth above.

67.     Based on Sonos's filing of this action and at least Linkplay's second defense, an actual controversy has arisen and now exists between the parties on whether Linkplay infringes the '532 Patent.

68.     Absent a declaration of non-infringement, Sonos will continue to assert infringement against Linkplay and others, including Linkplay's customers, in violation of the law and contrary to the public policy of the United States, and thereby will continue to cause Linkplay irreparable injury and damages.

69.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Linkplay requests a declaration that Linkplay has not infringed (directly or indirectly) any valid and enforceable claim of this patent, either literally or under the doctrine of equivalents.

**COUNT THREE:**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '357 PATENT**

70.     Linkplay has not infringed and does not infringe the '357 patent, either directly (either literally or under the doctrine of equivalents), contributorily, or by inducement, and is not liable for infringement of any valid and enforceable claim of the '357 patent.

71.     Sonos asserted U.S. Patent Number 9,195,258 (the '258 patent), also directed to synchronization of group zone players and claiming to a same chain of priority applications as the '357 patent, against Google in ITC Investigation No. 337-TA-1191.  The International Trade

Commission, in its final determination, found that Google's certain products do not infringe the '258 patent. ITC Investigation No. 337-TA-1191, Commission Opinion. Sonos appealed this decision to the Federal Circuit and the Federal Circuit affirmed the non-infringement of Google's products. Sonos, Inc. v. ITC, 2022-1421, 2024 WL 1507605 (Fed. Cir. 2024). The '357 patent recites claim limitations similar to those of the '258 patent. Linkplay's accused products do not directly infringe the '357 patent for at least the reasons Google's products were found not to infringe the '258 patent and because the different technology Linkplay independently developed and implemented in its products.

72.     Linkplay's accused products do not indirectly infringe the '357 patent at least because there is no underlying direct infringement, which is required for any possible finding of indirect infringement. *Limelight Networks, Inc., v. Akamai Technologies, Inc.*, 134 S. Ct. 2111, 2117 (2014) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 341 (1961)) (finding indirect infringement liability can only arise "if, but only if, there is direct infringement"). Linkplay also does not actively induce any direct infringement or contribute to any direct infringement as the accused products have substantial noninfringing use including not implementing multi-room playback and are not especially made or especially adapted for use in an infringement. 35 U.S.C. § 271(b)-(c).

73.     Sonos is not entitled to relief of any claim in the Complaint for at least the reasons in this Answer and Counterclaims, including the affirmative defenses set forth above.

74.     Based on Sonos's filing of this action and at least Linkplay's second defense, an actual controversy has arisen and now exists between the parties on whether Linkplay infringes the '357 Patent.

75.     Absent a declaration of non-infringement, Sonos will continue to assert infringement against Linkplay and others, including Linkplay's customers, in violation of the law and contrary to the public policy of the United States, and thereby will continue to cause Linkplay irreparable injury and damages.

76.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Linkplay requests a declaration that Linkplay has not infringed (directly or indirectly) any valid and enforceable claim of this patent, either literally or under the doctrine of equivalents.

**COUNT FOUR:**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '883 PATENT**

77.     Linkplay has not infringed and does not infringe the '883 patent, either directly (either literally or under the doctrine of equivalents), contributorily, or by inducement, and is not liable for infringement of any valid and enforceable claim of the '883 patent.

78.     Sonos asserted U.S. Patent Number 10,439,896 (the '896 patent), also directed to setup of group zone players and claiming to a same chain of priority application as the '883 patent, against Google in ITC Investigation No. 337-TA-1191.  The International Trade Commission, in its final determination, found that Google's certain products do not infringe the '896 patent.  ITC Investigation No. 337-TA-1191, Commission Opinion.  Sonos appealed this decision to the Federal Circuit and the Federal Circuit affirmed the non-infringement of Google's products.  Sonos, Inc. v. ITC, 2022-1421, 2024 WL 1507605 (Fed. Cir. 2024).  The '883 patent recites claim limitations similar to those of the '896 patent.  Linkplay's accused products do not directly infringe the '883 patent for at least the reasons Google's products were found not to infringe the '896 patent and because the different technology Linkplay independently developed and implemented in its products.

79.     Linkplay's accused products do not indirectly infringe the '883 patent at least because there is no underlying direct infringement, which is required for any possible finding of indirect infringement.  *Limelight Networks, Inc., v. Akamai Technologies, Inc.*, 134 S. Ct. 2111, 2117 (2014) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 341 (1961)) (finding indirect infringement liability can only arise "if, but only if, there is direct infringement").  Linkplay also does not actively induce any direct infringement or contribute to any direct infringement as the accused products have substantial noninfringing use including not implementing multi-room playback and are not especially made or especially adapted for use in an infringement.  35 U.S.C. § 271(b)-(c).

80.     Sonos is not entitled to relief of any claim in the Complaint for at least the reasons in this Answer and Counterclaims, including the affirmative defenses set forth above.

81.     Based on Sonos's filing of this action and at least Linkplay's second defense, an actual controversy has arisen and now exists between the parties on whether Linkplay infringes the '883 Patent.

82.     Absent a declaration of non-infringement, Sonos will continue to assert infringement against Linkplay and others, including Linkplay's customers, in violation of the law and contrary to the public policy of the United States, and thereby will continue to cause Linkplay irreparable injury and damages.

83.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., Linkplay requests a declaration that Linkplay has not infringed (directly or indirectly) any valid and enforceable claim of this patent, either literally or under the doctrine of equivalents.

## COUNT FIVE:
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '023 PATENT

84. Linkplay has not infringed and does not infringe the '023 patent, either directly (either literally or under the doctrine of equivalents), contributorily, or by inducement, and is not liable for infringement of any valid and enforceable claim of the '023 patent.

85. Linkplay's accused products do not directly infringe the '023 patent at least because the different technology Linkplay independently developed and implemented in its products. The accused products do not perform at least the claimed "arming" and "rearming" processes and claim features related thereto.

86. Linkplay's accused products do not indirectly infringe the '023 patent at least because there is no underlying direct infringement, which is required for any possible finding of indirect infringement. *Limelight Networks, Inc., v. Akamai Technologies, Inc.*, 134 S. Ct. 2111, 2117 (2014) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 341 (1961)) (finding indirect infringement liability can only arise "if, but only if, there is direct infringement"). Linkplay also does not actively induce any direct infringement or contribute to any direct infringement as the accused products have substantial noninfringing use and are not especially made or especially adapted for use in an infringement. 35 U.S.C. § 271(b)-(c).

87. Sonos is not entitled to relief of any claim in the Complaint for at least the reasons in this Answer and Counterclaims, including the affirmative defenses set forth above.

88. Based on Sonos's filing of this action and at least Linkplay's second defense, an actual controversy has arisen and now exists between the parties on whether Linkplay infringes the '023 Patent.

89. Absent a declaration of non-infringement, Sonos will continue to assert infringement against Linkplay and others, including Linkplay's customers, in violation of the law

and contrary to the public policy of the United States, and thereby will continue to cause Linkplay irreparable injury and damages.

90.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Linkplay requests a declaration that Linkplay has not infringed (directly or indirectly) any valid and enforceable claim of this patent, either literally or under the doctrine of equivalents.

## COUNT SIX:
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '014 PATENT

91.     The claims of the '014 patent are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation 35 U.S.C. §§ 101, 102, 103, and 112, the non-statutory doctrine of obviousness-type double-patenting, improper inventorship, and/or the rules, regulations, and laws pertaining thereto.

92.     The claims of the '014 patent are invalid under § 101 at least because they are directed to patent illegible abstract ideas without significantly more under *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014) and *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012).

93.     The claims of the '014 patent are invalid under §§ 102 and 103 because they are anticipated or rendered unpatentable by the mounting prior art cited in the '014 patent, cited in other Sonos patents claiming priority to or being claimed priority by or otherwise related to the '014 patent, cited in the Reexamination of the '014 patent, and cited by Sonos's opponents, such as D&M Holdings and Google, in Sonos patent litigations asserting the '014 patent or its related patents.

94.     The claims of the '014 patent are invalid under § 112 due to lack of written description and/or enablement at least because Sonos's improper continuation practice and claim amendments made during prosecution included limitations not adequately described and/or

enabled by the original application.  The claims of the '014 patent are also invalid under § 112 because they recite terms that are indefinite for failing to particularly point out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

95.     The claims of the '014 patent are invalid under the non-statutory doctrine of obviousness-type double-patenting because they are rendered obvious by other Sonos patents or patent applications that claim similar subject matter, alone or in light of additional prior art.

96.     The claims of the '014 patent are invalid due to improper inventorship.  The underlying application was filed with Robert A. Lambourne as the sole inventor.  Sonos claimed that the inventorship was incorrect and requested correction later, only upon discovery by its prosecution agent, to add Nicholas A. J. Millington as a co-inventor.  The record puts inventorship in question.

97.     Based on Sonos's filing of this action and at least Linkplay's third defense, an actual controversy has arisen and now exists between the parties over whether any valid claims exist for the '014 Patent.

98.     Absent a declaration of invalidity and/or unenforceability, Sonos will continue to assert infringement against Linkplay and others, including Linkplay's customers, in violation of the law and contrary to the public policy of the United States, and thereby will continue to cause Linkplay irreparable injury and damages.

99.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Linkplay requests a declaration that the claims of this patent are invalid and unenforceable.

**COUNT SEVEN:**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '532 PATENT**

100.     The claims of the '532 patent are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation 35 U.S.C. §§ 101,

102, 103, and 112, the non-statutory doctrine of obviousness-type double-patenting, improper

inventorship, and/or the rules, regulations, and laws pertaining thereto.

101.    The claims of the '532 patent are invalid under § 101 at least because they are

directed to patent illegible abstract idea without significantly more under *Alice Corp. v. CLS*

*Bank Int'l*, 573 U.S. 208 (2014) and *Mayo Collaborative Services v. Prometheus Laboratories,*

*Inc.*, 566 U.S. 66 (2012).

102.    The claims of the '532 patent are invalid under §§ 102 and 103 because they are

anticipated or rendered unpatentable by the mounting prior art cited in the '532 patent, cited in

other Sonos patents claiming priority to or being claimed priority by or otherwise related to the

'532 patent, and cited by Sonos's opponents, such as D&M Holdings and Google, in Sonos

patent litigations asserting patents related to the '532 patent.

103.    The claims of the '532 patent are invalid under § 112 due to lack of written

description and/or enablement at least because Sonos's improper continuation practice and claim

amendments made during prosecution included limitations not adequately described and/or

enabled by the original application.  The claims of the '532 patent are also invalid under § 112

because they recite terms that are indefinite for failing to particularly point out and distinctly

claiming the subject matter which the inventor or a joint inventor regards as the invention.

104.    The claims of the '532 patent are invalid under the non-statutory doctrine of

obviousness-type double-patenting because they are rendered obvious by other Sonos patents or

patent applications that claim similar subject matter, alone or in light of additional prior art.

105.    Based on Sonos's filing of this action and at least Linkplay's third defense, an

actual controversy has arisen and now exists between the parties over whether any valid claims

exist for the '532 Patent.

106.     Absent a declaration of invalidity, Sonos will continue to assert infringement against Linkplay and others, including Linkplay's customers, in violation of the law and contrary to the public policy of the United States, and thereby will continue to cause Linkplay irreparable injury and damage.

107.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Linkplay requests a declaration that the claims of this patent are invalid and unenforceable.

## COUNT EIGHT:
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '357 PATENT

108.     The claims of the '357 patent are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation 35 U.S.C. §§ 101, 102, 103, and 112, the non-statutory doctrine of obviousness-type double- patenting, improper inventorship, and/or the rules, regulations, and laws pertaining thereto.

109.     The claims of the '357 patent are invalid under § 101 at least because they are directed to patent illegible abstract idea without significantly more under *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014) and *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012).

110.     The claims of the '357 patent are invalid under §§ 102 and 103 because they are anticipated by or rendered unpatentable by the mounting prior art cited in the '357 patent, cited in other Sonos patents claiming priority to or being claimed priority by or otherwise related to the '357 patent, and cited by Sonos's opponents, such as D&M Holdings and Google, in Sonos patent litigations asserting the '357 patent or its related patents.

111.     The claims of the '357 patent are invalid under § 112 due to lack of written description and/or enablement at least because Sonos's improper continuation practice and claim amendments made during prosecution included limitations not adequately described and/or

enabled by the original application.  The claims of the '357 patent are also invalid under § 112 because they recite terms that are indefinite for failing to particularly point out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

112.    The claims of the '357 patent are invalid under the non-statutory doctrine of obviousness-type double-patenting because they are rendered obvious by other Sonos patents or patent applications that claim similar subject matter, alone or in light of additional prior art.

113.    Based on Sonos's filing of this action and at least Linkplay's third defense, an actual controversy has arisen and now exists between the parties over whether any valid claims exist for the '357 Patent.

114.    Absent a declaration of invalidity, Sonos will continue to assert infringement against Linkplay and others, including Linkplay's customers, in violation of the law and contrary to the public policy of the United States, and thereby will continue to cause Linkplay irreparable injury and damage.

115.    Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Linkplay requests a declaration that the claims of this patent are invalid and unenforceable.

## COUNT NINE:
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '883 PATENT

116.    The claims of the '883 patent are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation 35 U.S.C. §§ 101, 102, 103, and 112, the non-statutory doctrine of obviousness-type double-patenting, improper inventorship, and/or the rules, regulations, and laws pertaining thereto.

117.    The claims of the '883 patent are invalid under § 101 at least because they are directed to patent illegible abstract idea without significantly more under *Alice Corp. v. CLS*

*Bank Int'l*, 573 U.S. 208 (2014) and *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012).

118.    The claims of the '883 patent are invalid under §§ 102 and 103 because they are anticipated by or rendered unpatentable by the mounting prior art cited in the '883 patent, cited in other Sonos patents claiming priority to or being claimed priority by or otherwise related to the '883 patent, and cited by Sonos's opponents, such as D&M Holdings and Google, in Sonos patent litigations asserting patents related to the '883 patent.

119.    The claims of the '883 patent are invalid under § 112 due to lack of written description and/or enablement at least because Sonos's improper continuation practice and claim amendments made during prosecution included limitations not adequately described and/or enabled by the original application.  The claims of the '883 patent are also invalid under § 112 because they recite terms that are indefinite for failing to particularly point out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

120.    The claims of the '883 patent are invalid under the non-statutory doctrine of obviousness-type double-patenting because they are rendered obvious by other Sonos patents or patent applications that claim similar subject matter, alone or in light of additional prior art.

121.    Based on Sonos's filing of this action and at least Linkplay's third defense, an actual controversy has arisen and now exists between the parties over whether any valid claims exist for the '883 Patent.

122.    Absent a declaration of invalidity, Sonos will continue to assert infringement against Linkplay and others, including Linkplay's customers, in violation of the law and contrary to the public policy of the United States, and thereby will continue to cause Linkplay irreparable injury and damage.

123.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Linkplay requests a declaration that the claims of this patent are invalid and unenforceable.

**<u>COUNT TEN:</u>**
**<u>DECLARATORY JUDGMENT OF INVALIDITY OF THE '023 PATENT</u>**

124.     The claims of the '023 patent are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation 35 U.S.C. §§ 101, 102, 103, and 112, the non-statutory doctrine of obviousness-type double-patenting, improper inventorship, and/or the rules, regulations, and laws pertaining thereto.

125.     The claims of the '023 patent are invalid under § 101 at least because they are directed to patent illegible abstract idea without significantly more under *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014) and *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012).

126.     The claims of the '023 patent are invalid under §§ 102 and 103 because they are anticipated by or rendered unpatentable by the mounting prior art cited in the '023 patent, cited in other Sonos patents claiming priority to or being claimed priority by or otherwise related to the '023 patent, and cited by Sonos's opponents, such as D&M Holdings and Google, in Sonos patent litigations asserting patents related to the '023 patent.

127.     The claims of the '023 patent are invalid under § 112 due to lack of written description and/or enablement at least because Sonos's improper continuation practice and claim amendments made during prosecution included limitations not adequately described and/or enabled by the original application.  The claims of the '023 patent are also invalid under § 112 because they recite terms that are indefinite for failing to particularly point out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

56

128.    The claims of the '023 patent are invalid under the non-statutory doctrine of obviousness-type double-patenting because they are rendered obvious by other Sonos patents or patent applications that claim similar subject matter, alone or in light of additional prior art.

129.    Based on Sonos's filing of this action and at least Linkplay's third defense, an actual controversy has arisen and now exists between the parties over whether any valid claims exist for the '023 Patent.

130.    Absent a declaration of invalidity, Sonos will continue to assert infringement against Linkplay and others, including Linkplay's customers, in violation of the law and contrary to the public policy of the United States, and thereby will continue to cause Linkplay irreparable injury and damage.

131.    Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Linkplay requests a declaration that the claims of this patent are invalid and unenforceable.

<u>**COUNT ELEVEN:**</u>
<u>**DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '014 PATENT**</u>

132.    The '014 patent is unenforceable for at least one of the grounds for unenforceability Linkplay has pleaded in its affirmative defenses to Sonos's infringement claims, including lack of standing, equitable estoppel, waiver, license/exhaustion, inequitable conduct, prosecution laches, prosecution-history estoppel, and/or unclean hands. Linkplay realleges and incorporates by reference the allegations in the above paragraphs corresponding to these affirmative defenses as if they were fully set forth herein.

133.    On information and belief, Sonos committed strategic and deceptive acts to mislead the United States Patent and Trademark Office in the prosecution of the '014 patent. Sonos has previously been found by a Court to have misled and deceived the USPTO in the prosecution of its patents. *Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at

*27 (N.D. Cal. Oct. 6, 2023) ("Sonos claimed the priority date of the 2006 provisional application because the inventive subject matter was ostensibly disclosed by that application. But here, this subject matter could not have been disclosed until 2019, when the reappropriated sentence was ***strategically and deceptively*** added to the specification of the patents in suit." (emphasis added)).  For example, on information and belief, Sonos filed the '014 patent as a continuing application or amended the claims during prosecution, knowing the claimed subject matter was not disclosed or enabled in the original application.

134.  On information and belief, Sonos named the wrong inventorship with deceptive intent either initially when filing the application for the '014 patent by leaving out an inventor or later when adding a non-inventor to the inventorship.  The underlying application was filed with Robert A. Lambourne as the sole inventor.  Later in prosecution, Sonos claimed that the inventorship was incorrect and requested correction, only upon discovery by its prosecution agent, to add Nicholas A. J. Millington as a co-inventor.  The record puts inventorship and Sonos's practice in naming the inventorship in the '014 patent in question.

135.  On information and belief, during prosecution, Sonos intentionally "buried" the relevant prior art by over-disclosing non-prior art and/or nonrelevant prior art in the '014 patent. *See PACT XPP Schweiz AG v. Intel Corp.*, C.A. No. 19-01006-JDW, D.I. 399 at 14–16 (D. Del. March 24, 2023) (denying summary judgment of no inequitable conduct and holding that "burying" is a recognized theory of inequitable conduct under *Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995)).  During the prosecution (including the Reexamination proceeding) of the '014 patent, Sonos cited hundreds of references to the USPTO, and many of these disclosed references have publication dates later than the filing date of the earliest non-provisional, bringing their relevance into question.

58

136.     The '014 patent is further unenforceable against Linkplay under the doctrine of equitable estoppel and/or the doctrine of waiver.  Qualcomm Inc. v. Broadcom Corp., 548 F.3d 1004, 1024-26 (Fed. Cir. 2008) (recognizing equitable estoppel/waiver as an unenforceability doctrine).  Linkplay incorporates by reference and realleges paragraphs 31-38 of the Answers above and paragraphs 11-46 of the Counterclaims as if they are fully set forth here.  Sonos has had a history of first reaching out to potential technology partners for help and then suing them for patent infringement after learning more about the intricate details of their products and technologies.  *See Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *10–11 (N.D. Cal. Oct. 6, 2023).  Here, Sonos requested to meet with Linkplay to explore business opportunities to work together, including asking Linkplay to provide its superior technology solutions to help improve Sonos's products, integrating Linkplay's products with Sonos's products, and for Sonos to make an investment on or acquisition of Linkplay.  Nearly a year of extensive communications between the parties never centered on Sonos's IP or Linkplay's alleged infringement, until a sudden and dramatic change of course in December 2023 when Sonos repaid Linkplay's assistance and good-faith collaboration with a cease-and-desist letter sent on December 11, 2023, just prior to the holidays and this lawsuit a few weeks later, just before the lunar new year.  Sonos's misleading conduct toward Linkplay led Linkplay to reasonably infer that Sonos does not intend to enforce its patents against Linkplay and Linkplay relied on that inference.  Due to its reliance, Linkplay will be materially prejudiced if Sonos is allowed to proceed with its claims.  Sonos's conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished, and thus falls within the doctrine of waiver.  Sonos should be barred to assert the '014 patent against Linkpaly under the doctrine of equitable estoppel and/or waiver.

137.    Based on Sonos's filing of this action and at least Linkplay's relevant defenses identified above, an actual controversy has arisen and now exists between the parties over whether the '014 patent is enforceable.

138.    Absent a declaration of unenforceability, Sonos will continue to assert infringement against Linkplay and others, including Linkplay's customers, in violation of the law and contrary to the public policy of the United States, and thereby will continue to cause Linkplay irreparable injury and damages.

139.    Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Linkplay requests a declaration that this patent is unenforceable.

**COUNT TWELVE:**
**DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '532 PATENT**

140.    The '532 patent is unenforceable for at least one of the grounds for unenforceability Linkplay has pleaded in its affirmative defenses to Sonos's infringement claims, including lack of standing, equitable estoppel, waiver, license/exhaustion, inequitable conduct, prosecution laches, prosecution-history estoppel, and/or unclean hands. Linkplay realleges and incorporates by reference the allegations in the above paragraphs corresponding to these affirmative defenses as if they were fully set forth herein.

141.    On information and belief, Sonos committed strategic and deceptive acts to mislead the United States Patent and Trademark Office in the prosecution of the '532 patent. Sonos has previously been found by a Court to have misled and deceived the USPTO in the prosecution of its patents. *Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *27 (N.D. Cal. Oct. 6, 2023) ("Sonos claimed the priority date of the 2006 provisional application because the inventive subject matter was ostensibly disclosed by that application. But here, this subject matter could not have been disclosed until 2019, when the reappropriated

sentence was ***strategically and deceptively*** added to the specification of the patents in suit." (emphasis added)).  For example, on information and belief, Sonos filed the '532 patent as a continuing application or amended the claims during prosecution, knowing the claimed subject matter was not disclosed or enabled in the original application.

142.    On information and belief, Sonos has also inappropriately used the patent-prosecution system to unfairly capture claim scope for the '532 patent.  For example, the '532 patent was filed 9 years after the first priority application – it was filed in 2012, as a continuation of U.S. Application No. 13/297,000 (granted as U.S. Patent No. 9,182,777) filed in 2011, which is continuation of U.S. Application No. 10/816,217 (granted as U.S. Patent No. 8,234,396) filed in 2004, which claims priority to U.S. Prov. Application No. 60/490,768 filed in 2003.  Courts have found delays greater than eight years to be unreasonable for purposes of prosecution laches. *Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *17 (N.D. Cal. Oct. 6, 2023) (finding Sonos patents unenforceable due to prosecution laches) (determining that Federal Circuit and Supreme Court cases on prosecution laches found delays greater than eight years unreasonable).  Sonos then inappropriately used the continuation patent practice to unfairly capture claim scope for the '532 patent.  This is consistent with how Sonos has also been found to inappropriately use the patent-prosecution system to unfairly capture claim scope.  *Id.* at *19 ("[T]his order finds and concludes, by clear and convincing evidence, that Sonos was guilty of unreasonable and inexcusable delay in prosecution of the patents in suit, to the extreme prejudice of Google and others.").

143.    On information and belief, during prosecution, Sonos intentionally "buried" the relevant prior art by over-disclosing non-prior art and/or nonrelevant prior art in the '532 patent. *See PACT XPP Schweiz AG v. Intel Corp.*, C.A. No. 19-01006-JDW, D.I. 399 at 14–16 (D. Del.

March 24, 2023) (denying summary judgment of no inequitable conduct and holding that "burying" is a recognized theory of inequitable conduct under *Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995)).  During the prosecution of the '532 patent, Sonos cited hundreds of references to the USPTO, and many of these disclosed references have publication dates later than the filing date of the earliest non-provisional, bringing their relevance into question.

144.     The '532 patent is further unenforceable against Linkplay under the doctrine of equitable estoppel and/or the doctrine of waiver.  Qualcomm Inc. v. Broadcom Corp., 548 F.3d 1004, 1024-26 (Fed. Cir. 2008) (recognizing equitable estoppel/waiver as an unenforceability doctrine).  Linkplay incorporates by reference and realleges paragraphs 31-38 of the Answers above and paragraphs 11-46 of the Counterclaims as if they are fully set forth here.  Sonos has had a history of first reaching out to potential technology partners for help and then suing them for patent infringement after learning more about the intricate details of their products and technologies. *See Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *10–11 (N.D. Cal. Oct. 6, 2023).  Here, Sonos requested to meet with Linkplay to explore business opportunities to work together, including asking Linkplay to provide its superior technology solutions to help improve Sonos's products, integrating Linkplay's products with Sonos's products, and for Sonos to make an investment on or acquisition of Linkplay.  Nearly a year of extensive communications between the parties never centered on Sonos's IP or Linkplay's alleged infringement, until a sudden and dramatic change of course in December 2023 when Sonos repaid Linkplay's assistance and good-faith collaboration with a cease-and-desist letter sent on December 11, 2023, just prior to the holidays and this lawsuit a few weeks later, just before the lunar new year.  Sonos's misleading conduct toward Linkplay led Linkplay to reasonably infer that Sonos does not intend to enforce its patents against Linkplay and Linkplay

relied on that inference.  Due to its reliance, Linkplay will be materially prejudiced if Sonos is allowed to proceed with its claims.  Sonos's conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished, and thus falls within the doctrine of waiver.  Sonos should be barred to assert the '014 patent against Linkpaly under the doctrine of equitable estoppel and/or waiver.

145.    Based on Sonos's filing of this action and at least Linkplay's fourth and seventh through thirteenth defenses, an actual controversy has arisen and now exists between the parties over whether the '532 Patent is enforceable.

146.    Absent a declaration of unenforceability, Sonos will continue to assert infringement against Linkplay and others, including Linkplay's customers, in violation of the law and contrary to the public policy of the United States, and thereby will continue to cause Linkplay irreparable injury and damage.

147.    Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., Linkplay requests a declaration that the claims of this patent are unenforceable.

**COUNT THIRTEEN:**
**DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '357 PATENT**

148.    The '357 patent is unenforceable for at least one of the grounds for unenforceability Linkplay has pleaded in its affirmative defenses to Sonos's infringement claims, including lack of standing, equitable estoppel, waiver, license/exhaustion, inequitable conduct, prosecution laches, prosecution-history estoppel, and/or unclean hands.  Linkplay realleges and incorporates by reference the allegations in the above paragraphs corresponding to these affirmative defenses as if they were fully set forth herein.

149.    On information and belief, Sonos committed strategic and deceptive acts to mislead the United States Patent and Trademark Office in the prosecution of the '357 patent.

Sonos has previously been found by a Court to have misled and deceived the USPTO in the prosecution of its patents. *Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *27 (N.D. Cal. Oct. 6, 2023) ("Sonos claimed the priority date of the 2006 provisional application because the inventive subject matter was ostensibly disclosed by that application. But here, this subject matter could not have been disclosed until 2019, when the reappropriated sentence was ***strategically and deceptively*** added to the specification of the patents in suit." (emphasis added)).  For example, on information and belief, Sonos filed the '357 patent as a continuing application or amended the claims during prosecution, knowing the claimed subject matter was not disclosed or enabled in the original application.

150.    On information and belief, Sonos has also inappropriately used the patent-prosecution system to unfairly capture claim scope for the '357 patent.  For example, the '357 patent was filed 11 years after the first priority application – it was filed in 2014, as a continuation of U.S. Application No. 13/297,000 (granted as U.S. Patent No. 9,182,777) filed in 2011, which is continuation of U.S. Application No. 10/816,217 (granted as U.S. Patent No. 8,234,396) filed in 2004, which claims priority to U.S. Prov. Application No. 60/490,768 filed in 2003.  Courts have found delays greater than eight years to be unreasonable for purposes of prosecution laches.  *Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *17 (N.D. Cal. Oct. 6, 2023) (finding Sonos patents unenforceable due to prosecution laches) (determining that Federal Circuit and Supreme Court cases on prosecution laches found delays greater than eight years unreasonable).  Sonos then inappropriately used the continuation patent practice to unfairly capture claim scope for the '357 patent.  This is consistent with how Sonos has also been found to inappropriately use the patent-prosecution system to unfairly capture claim scope.  *Id.* at *19 ("[T]his order finds and concludes, by clear and convincing evidence,

that Sonos was guilty of unreasonable and inexcusable delay in prosecution of the patents in suit, to the extreme prejudice of Google and others.").

151.    On information and belief, during prosecution, Sonos intentionally "buried" the relevant prior art by over-disclosing non-prior art and/or nonrelevant prior art in the '357 patent. *See PACT XPP Schweiz AG v. Intel Corp.*, C.A. No. 19-01006-JDW, D.I. 399 at 14–16 (D. Del. March 24, 2023) (denying summary judgment of no inequitable conduct and holding that "burying" is a recognized theory of inequitable conduct under *Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995)).  During the prosecution of the '357 patent, Sonos cited hundreds of references to the USPTO, and many of these disclosed references have publication dates later than the filing date of the earliest non-provisional, bringing their relevance into question.

152.    The '357 patent is further unenforceable against Linkplay under the doctrine of equitable estoppel and/or the doctrine of waiver.  Qualcomm Inc. v. Broadcom Corp., 548 F.3d 1004, 1024-26 (Fed. Cir. 2008) (recognizing equitable estoppel/waiver as an unenforceability doctrine).  Linkplay incorporates by reference and realleges paragraphs 31-38 of the Answers above and paragraphs 11-46 of the Counterclaims as if they are fully set forth here.  Sonos has had a history of first reaching out to potential technology partners for help and then suing them for patent infringement after learning more about the intricate details of their products and technologies. *See Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *10–11 (N.D. Cal. Oct. 6, 2023).  Here, Sonos requested to meet with Linkplay to explore business opportunities to work together, including asking Linkplay to provide its superior technology solutions to help improve Sonos's products, integrating Linkplay's products with Sonos's products, and for Sonos to make an investment on or acquisition of Linkplay.  Nearly a year of extensive communications between the parties never centered on Sonos's IP or Linkplay's

alleged infringement, until a sudden and dramatic change of course in December 2023 when Sonos repaid Linkplay's assistance and good-faith collaboration with a cease-and-desist letter sent on December 11, 2023, just prior to the holidays and this lawsuit a few weeks later, just before the lunar new year. Sonos's misleading conduct toward Linkplay led Linkplay to reasonably infer that Sonos does not intend to enforce its patents against Linkplay and Linkplay relied on that inference. Due to its reliance, Linkplay will be materially prejudiced if Sonos is allowed to proceed with its claims. Sonos's conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished, and thus falls within the doctrine of waiver. Sonos should be barred to assert the '014 patent against Linkpaly under the doctrine of equitable estoppel and/or waiver.

153.    Based on Sonos's filing of this action and at least Linkplay's relevant defenses identified above, an actual controversy has arisen and now exists between the parties over whether the '357 Patent is enforceable.

154.    Absent a declaration of unenforceability, Sonos will continue to assert infringement against Linkplay and others, including Linkplay's customers, in violation of the law and contrary to the public policy of the United States, and thereby will continue to cause Linkplay irreparable injury and damage.

155.    Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Linkplay requests a declaration that this patent is unenforceable.

## COUNT FOURTEEN:
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '883 PATENT

156.    The'883 patent is unenforceable for at least one of the grounds for unenforceability Linkplay has pleaded in its affirmative defenses to Sonos's infringement claims, including lack of standing, equitable estoppel, waiver, license/exhaustion, inequitable conduct,

prosecution laches, prosecution-history estoppel, and/or unclean hands.  Linkplay realleges and incorporates by reference the allegations in the above paragraphs corresponding to these affirmative defenses as if they were fully set forth herein.

157.    On information and belief, Sonos committed strategic and deceptive acts to mislead the United States Patent and Trademark Office in the prosecution of the '883 patent. Sonos has previously been found by a Court to have misled and deceived the USPTO in the prosecution of its patents. *Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *27 (N.D. Cal. Oct. 6, 2023) ("Sonos claimed the priority date of the 2006 provisional application because the inventive subject matter was ostensibly disclosed by that application. But here, this subject matter could not have been disclosed until 2019, when the reappropriated sentence was ***strategically and deceptively*** added to the specification of the patents in suit." (emphasis added)).  For example, on information and belief, Sonos filed the '883 patent as a continuing application or amended the claims during prosecution, knowing the claimed subject matter was not disclosed or enabled in the original application.

158.    On information and belief, Sonos has also inappropriately used the patent-prosecution system to unfairly capture claim scope for the '883 patent.  For example, the '883 patent was filed 15 years after the first priority application – it was filed in 2019, as a continuation of U.S. Application No. 15/091,113 filed in 2016, which is continuation of U.S. Application No. 14/486,667 (granted as U.S. Patent No. 9,866,447) filed in 2014, which is continuation of U.S. Application No. 13/618,829 (granted as U.S. Patent No. 8,868,698) filed in 2012, which is continuation of U.S. Application No. 11/147,116 (granted as U.S. Patent 8,326,951) filed in 2005, which claims priority to U.S. Prov. Application No. 60/577,284 filed in 2004.  Courts have found delays greater than eight years to be unreasonable for purposes of

prosecution laches. *Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *17 (N.D. Cal. Oct. 6, 2023) (finding Sonos patents unenforceable due to prosecution laches) (determining that Federal Circuit and Supreme Court cases on prosecution laches found delays greater than eight years unreasonable).  Sonos then inappropriately used the continuation patent practice to unfairly capture claim scope for the '883 patent.  This is consistent with how Sonos has also been found to inappropriately use the patent-prosecution system to unfairly capture claim scope. *Id.* at *19 ("[T]his order finds and concludes, by clear and convincing evidence, that Sonos was guilty of unreasonable and inexcusable delay in prosecution of the patents in suit, to the extreme prejudice of Google and others.").

159.    On information and belief, during prosecution, Sonos intentionally "buried" the relevant prior art by over-disclosing non-prior art and/or nonrelevant prior art in the '883 patent. *See PACT XPP Schweiz AG v. Intel Corp.*, C.A. No. 19-01006-JDW, D.I. 399 at 14–16 (D. Del. March 24, 2023) (denying summary judgment of no inequitable conduct and holding that "burying" is a recognized theory of inequitable conduct under *Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995)).  During the prosecution of the '883 patent, Sonos cited hundreds of references to the USPTO, and many of these disclosed references have publication dates later than the filing date of the earliest non-provisional, bringing their relevance into question.

160.    The '883 patent is further unenforceable against Linkplay under the doctrine of equitable estoppel and/or the doctrine of waiver.  Qualcomm Inc. v. Broadcom Corp., 548 F.3d 1004, 1024-26 (Fed. Cir. 2008) (recognizing equitable estoppel/waiver as an unenforceability doctrine).  Linkplay incorporates by reference and realleges paragraphs 31-38 of the Answers above and paragraphs 11-46 of the Counterclaims as if they are fully set forth here.  Sonos has had a history of first reaching out to potential technology partners for help and then suing them

for patent infringement after learning more about the intricate details of their products and technologies. *See Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *10–11 (N.D. Cal. Oct. 6, 2023). Here, Sonos requested to meet with Linkplay to explore business opportunities to work together, including asking Linkplay to provide its superior technology solutions to help improve Sonos's products, integrating Linkplay's products with Sonos's products, and for Sonos to make an investment on or acquisition of Linkplay. Nearly a year of extensive communications between the parties never centered on Sonos's IP or Linkplay's alleged infringement, until a sudden and dramatic change of course in December 2023 when Sonos repaid Linkplay's assistance and good-faith collaboration with a cease-and-desist letter sent on December 11, 2023, just prior to the holidays and this lawsuit a few weeks later, just before the lunar new year. Sonos's misleading conduct toward Linkplay led Linkplay to reasonably infer that Sonos does not intend to enforce its patents against Linkplay and Linkplay relied on that inference. Due to its reliance, Linkplay will be materially prejudiced if Sonos is allowed to proceed with its claims. Sonos's conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished, and thus falls within the doctrine of waiver. Sonos should be barred to assert the '014 patent against Linkpaly under the doctrine of equitable estoppel and/or waiver.

161.   Based on Sonos's filing of this action and at least Linkplay's relevant defenses identified above, an actual controversy has arisen and now exists between the parties over whether the '883 Patent is enforceable.

162.   Absent a declaration of unenforceability, Sonos will continue to assert infringement against Linkplay and others, including Linkplay's customers, in violation of the law

and contrary to the public policy of the United States, and thereby will continue to cause Linkplay irreparable injury and damage.

163.    Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Linkplay requests a declaration that this patent is unenforceable.

<u>COUNT FIFTEEN:</u>
<u>DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '023 PATENT</u>

164.    The '023 patent is unenforceable for at least one of the grounds for unenforceability Linkplay has pleaded in its affirmative defenses to Sonos's infringement claims, including lack of standing, equitable estoppel, waiver, license/exhaustion, inequitable conduct, prosecution laches, prosecution-history estoppel, and/or unclean hands.  Linkplay realleges and incorporates by reference the allegations in the above paragraphs corresponding to these affirmative defenses as if they were fully set forth herein.

165.    On information and belief, Sonos committed strategic and deceptive acts to mislead the United States Patent and Trademark Office in the prosecution of the '023 patent. Sonos has previously been found by a Court to have misled and deceived the USPTO in the prosecution of its patents. *Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *27 (N.D. Cal. Oct. 6, 2023) ("Sonos claimed the priority date of the 2006 provisional application because the inventive subject matter was ostensibly disclosed by that application. But here, this subject matter could not have been disclosed until 2019, when the reappropriated sentence was ***strategically and deceptively*** added to the specification of the patents in suit." (emphasis added)).  For example, on information and belief, Sonos filed the '023 patent as a continuing application or amended the claims during prosecution, knowing the claimed subject matter was not disclosed or enabled in the original application.

166.   On information and belief, Sonos has also inappropriately used the patent-prosecution system to unfairly capture claim scope for the '023 patent.  For example, the '023 patent was filed 7.5 years after the first priority application – it was filed in Oct 2018, as a continuation of U.S. Application No. 15/583,553 filed in 2017 (granted as U.S. Patent No. 10,108,393), which is continuation of U.S. Application No. 14/628,999 (granted as U.S. Patent No. 9,686,606) filed in 2015, which is continuation of U.S. Application No. 14/561,421 (granted as U.S. Patent No. 9,681,223) filed in 2014, which is continuation of U.S. Application No. 13/089,167 (granted as U.S. Patent No. 8,938,312) filed in April 2011.  Courts have found delays greater than eight years to be unreasonable for purposes of prosecution laches. *Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *17 (N.D. Cal. Oct. 6, 2023) (finding Sonos patents unenforceable due to prosecution laches) (determining that Federal Circuit and Supreme Court cases on prosecution laches found delays greater than eight years unreasonable). Sonos then inappropriately used the continuation patent practice to unfairly capture claim scope for the '883 patent.  This is consistent with how Sonos has also been found to inappropriately use the patent-prosecution system to unfairly capture claim scope.  *Id.* at *19 ("[T]his order finds and concludes, by clear and convincing evidence, that Sonos was guilty of unreasonable and inexcusable delay in prosecution of the patents in suit, to the extreme prejudice of Google and others.").

167.   On information and belief, during prosecution, Sonos intentionally "buried" the relevant prior art by over-disclosing non-prior art and/or nonrelevant prior art in the '883 patent. *See PACT XPP Schweiz AG v. Intel Corp.*, C.A. No. 19-01006-JDW, D.I. 399 at 14–16 (D. Del. March 24, 2023) (denying summary judgment of no inequitable conduct and holding that "burying" is a recognized theory of inequitable conduct under *Molins PLC v. Textron, Inc.*, 48

F.3d 1172 (Fed. Cir. 1995)).  During the prosecution of the '883 patent, Sonos cited hundreds of references to the USPTO, and many of these disclosed references have publication dates later than the filing date of the earliest non-provisional, bringing their relevance into question.

168.    The '023 patent is further unenforceable against Linkplay under the doctrine of equitable estoppel and/or the doctrine of waiver.  Qualcomm Inc. v. Broadcom Corp., 548 F.3d 1004, 1024-26 (Fed. Cir. 2008) (recognizing equitable estoppel/waiver as an unenforceability doctrine).  Linkplay incorporates by reference and realleges paragraphs 31-38 of the Answers above and paragraphs 11-46 of the Counterclaims as if they are fully set forth here.  Sonos has had a history of first reaching out to potential technology partners for help and then suing them for patent infringement after learning more about the intricate details of their products and technologies. *See Sonos, Inc. v. Google LLC*, C 20-06754 WHA, 2023 WL 6542320, at *10–11 (N.D. Cal. Oct. 6, 2023).  Here, Sonos requested to meet with Linkplay to explore business opportunities to work together, including asking Linkplay to provide its superior technology solutions to help improve Sonos's products, integrating Linkplay's products with Sonos's products, and for Sonos to make an investment on or acquisition of Linkplay.  Nearly a year of extensive communications between the parties never centered on Sonos's IP or Linkplay's alleged infringement, until a sudden and dramatic change of course in December 2023 when Sonos repaid Linkplay's assistance and good-faith collaboration with a cease-and-desist letter sent on December 11, 2023, just prior to the holidays and this lawsuit a few weeks later, just before the lunar new year.  Sonos's misleading conduct toward Linkplay led Linkplay to reasonably infer that Sonos does not intend to enforce its patents against Linkplay and Linkplay relied on that inference.  Due to its reliance, Linkplay will be materially prejudiced if Sonos is allowed to proceed with its claims.  Sonos's conduct was so inconsistent with an intent to

enforce its rights as to induce a reasonable belief that such right has been relinquished, and thus falls within the doctrine of waiver.  Sonos should be barred to assert the '014 patent against Linkpaly under the doctrine of equitable estoppel and/or waiver.

169.    Based on Sonos's filing of this action and at least Linkplay's relevant defenses identified above, an actual controversy has arisen and now exists between the parties over whether the '023 Patent is enforceable.

170.    Absent a declaration of unenforceability, Sonos will continue to assert infringement against Linkplay and others, including Linkplay's customers, in violation of the law and contrary to the public policy of the United States, and thereby will continue to cause Linkplay irreparable injury and damage.

171.    Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., Linkplay requests a declaration that this patent is unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Linkplay respectfully asks the Court to grant the following relief:

A.  Dismissal of Sonos's Complaint in its entirety and with prejudice;

B.  Denying all relief that Sonos seeks in its Complaint;

C.  A declaration that Linkplay has not infringed and does not infringe the '014 Patent;

D.  A declaration that Linkplay has not infringed and does not infringe the '532 Patent;

E.  A declaration that Linkplay has not infringed and does not infringe the '357 Patent;

F.  A declaration that Linkplay has not infringed and does not infringe the '883 Patent;

G.  A declaration that Linkplay has not infringed and does not infringe the '023 Patent;

H.  A declaration that the '014 Patent is invalid and/or unenforceable;

I.  A declaration that the '532 Patent is invalid and/or unenforceable;

J.   A declaration that the '357 Patent is invalid and/or unenforceable;

K.   A declaration that the '883 Patent is invalid and/or unenforceable;

L.   A declaration that the '023 Patent is invalid and/or unenforceable;

M.   Linkplay's reasonable attorney's fees, experts' fees, costs and expenses; and

N.   Such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Linkplay hereby demands a jury for all issues so triable raised by Sonos's Complaint or by Linkplay's Answer and Counterclaims.

|  |  |
|---|---|
|  | */s/ Karen E. Keller* |
|  | Karen E. Keller (No. 4489) |
|  | Andrew E. Russell (No. 5382) |
|  | Emily S. DiBenedetto (No. 6779) |
|  | Lindsey M. Gellar (No. 7202) |
| OF COUNSEL: | SHAW KELLER LLP |
| Mandy Song, Ph. D. | I.M. Pei Building |
| Gavin Ye, Ph. D. | 1105 North Market Street, 12th Floor |
| Kris Teng | Wilmington, DE 19801 |
| BAYES PLLC | (302) 298-0700 |
| 8260 Greensboro Dr Suite 625, | kkeller@shawkeller.com |
| McLean, VA 22102 | arussell@shawkeller.com |
| (703) 995-9887 | edibenedetto@shawkeller.com |
|  | lgellar@shawkeller.com |
| Dated: May 17, 2024 | *Attorneys for Defendant LinkPlay Technology Inc.* |