**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SONOS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.  24-131-JNR |
| v. | ) | |
| | ) | |
| LINKPLAY TECHNOLOGY INC. and | ) | **JURY TRIAL DEMANDED** |
| LINKPLAY TECHNOLOGY, INC., | ) | |
| NANJING, | ) | |
| | ) | |
| Defendants. | ) | |

**SONOS, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
OR STRIKE LINKPLAY TECHNOLOGY INC.'S AFFIRMATIVE DEFENSES
& COUNTERCLAIMS UNDER FEDERAL RULES OF
CIVIL PROCEDURE 12(b)(6) & 12(f)**

OF COUNSEL:

George I. Lee
Sean M. Sullivan
Rory P. Shea
J. Dan Smith
Michael P. Boyea
Cole B. Richter
Jae Y. Pak
Lee Sullivan Shea & Smith LLP
656 W. Randolph St., Floor 5W
Chicago, IL 60661
(312) 754-9602

Dated:  May 31, 2024

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for Plaintiff Sonos, Inc.*

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.   SUMMARY OF ARGUMENT ................................................................................. 1

III.  STATEMENT OF FACTS ..................................................................................... 3

   A.   Linkplay's Amended Pleading ..................................................................... 3

   B.   Sonos's Prior Cases ................................................................................. 4

IV.   LEGAL STANDARDS ......................................................................................... 6

V.    ARGUMENT .................................................................................................... 7

   A.   There Is No Factual Basis for Linkplay's Pleading of §288 ................................ 7

   B.   Each of Linkplay's Noninfringement Counterclaims Is Deficient ......................... 8

      1.   Linkplay's Allegation of No Direct Infringement in *Counts One-Four* Are Barebones and Conclusory ..................................................................... 8

      2.   Linkplay's Allegation of No Indirect Infringement in *Counts One-Five* Are Barebones and Conclusory ..................................................................... 9

   C.   Each of Linkplay's Invalidity Counterclaims Is Deficient ................................. 10

   D.   Linkplay's Unenforceability Counterclaims and Affirmative Defenses That Correspond to Some of Its Unenforceability Counterclaims Are Deficient ............... 12

      1.   Equitable Estoppel ............................................................................. 16

      2.   Waiver ............................................................................................. 17

      3.   Inequitable Conduct ........................................................................... 18

      4.   Unclean Hands .................................................................................. 19

VI.   CONCLUSION ................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.,*
  636 F. Supp. 3d 483 (D. Del. 2022) .......................................................................... 19

*Analog Devices, Inc. v. Xilinx, Inc.,*
  19-CV-2225, 2021 WL 466859 (D. Del. Feb. 9, 2021) ............................................. 18

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................................... 6

*Barry v. Stryker Corp.,*
  20-CV-1787, 2023 WL 2733652 (D. Del. Mar. 20, 2023) ......................................... 20

*Bayer CropScience AG v. Dow AgroSciences LLC,* 10-CV-1045,
  2011 WL 6934557 (D. Del. Dec. 30, 2011) ......................................................... 15, 16

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .................................................................................................... 6

*Bench Walk Lighting LLC v. Everlight Elecs. Co.,*
  20-CV-49, 2020 WL 5128086 (D. Del. Aug. 31, 2020) ....................................... 15, 20

*Cont'l Auto. Sys., Inc. v. Nokia Corp.,*
  21-CV-345, 2021 WL 5299243 (D. Del. Nov. 15, 2021) ........................................... 13

*Cordance Corp. v. Amazon.com, Inc.,*
  631 F. Supp. 2d 484 (D. Del. 2009) ............................................................................ 8

*Coronado v. Chevy Chase Bank, FSB,*
  554 F. App'x 549 (9th Cir. 2014) ............................................................................. 13

*CryoLife, Inc. v. C.R. Bard, Inc.,*
  14-CV-559, 2015 WL 1069397 (D. Del. Mar. 10, 2015) ......................................... 11

*DSM IP Assets, B.V. v. Honeywell Int'l, Inc.,*
  23-CV-675, 2024 WL 639991 (D. Del. Feb. 15, 2024) ............................................... 9

*Easton Tech. Prods., Inc. v. FeraDyne Outdoors, LLC,*
  18-CV-1222, 2019 WL 1513463 (D. Del. Apr. 8, 2019) ........................................... 12

*EMC Corp. v. Pure Storage, Inc.,*
  13-CV-1985, 2014 WL 5795557 (D. Del. Nov. 5, 2014) ..................................... 18, 20

*EMC Corp. v. Zerto, Inc.,*
  12-CV-956, 2014 WL 3809365 (D. Del. July 31, 2014) ....................................... 7, 10

*ExcelStor Techs., Inc. v. Papst Licensing GmbH & Co. KG,*
    *541 F.3d 1373 (Fed. Cir. 2008)* ........................................................... *13*

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
    *575 F.3d 1312 (Fed. Cir. 2009)* ........................................................... *18*

*Idenix Pharms., Inc. v. Gilead Scis., Inc.,*
    *13-CV 13-1987, 2014 WL 4222902 (D. Del. Aug. 25, 2014)* ............................ *7, 11*

*In re Ojo,*
    *21-CV-11357, 2021 WL 3732904 (D.N.J. Aug. 23, 2021)* .................................... *12*

*Int'l Bus. Machines Corp. v. Priceline Grp. Inc.,*
    *No. 15-CV-137, 2017 WL 1349175 (D. Del. Apr. 10, 2017)* ............................ *6, 14*

*OrthoPediatrics Corp. v. Wishbone Med., Inc.,*
    *20-CV-929, 2022 WL 4529382 (N.D. Ind. Sept. 28, 2022)* .................................. *13*

*Personalized Media Commc'ns, LLC v. Apple Inc.,*
    *57 F.4th 1346 (Fed. Cir. 2023)* ........................................................... *14*

*Philips Elecs. N. Am. Corp. v. Contec Corp.,*
    *312 F. Supp. 2d 639 (D. Del. 2004)* ....................................................... *16*

*Princeton Digital Image Corp. v. Konami Digital Ent. Inc.,*
    *12-CV-1461, 2017 WL 239326 (D. Del. Jan. 19, 2017)* .................................... *7, 8*

*RAH Color Techs. LLC v. Ricoh USA Inc.,*
    *194 F. Supp. 3d 346 (E.D. Pa. 2016)* ...................................................... *12*

*Sonos, Inc. v. D&M Holdings Inc.,*
    *No. 14-CV-1330, 2016 WL 4249493 (D. Del. Aug. 10, 2016)* ................................. *7*

*Sonos, Inc. v. Google LLC,*
    *20-CV-06754, 2023 WL 6542320 (N.D. Cal. Oct. 6, 2023)* .................................. *5*

*Sonos, Inc. v. Int'l Trade Comm'n,*
    *No. 2022-1421, 2024 WL 1507605 (Fed. Cir. Apr. 8, 2024)* ................................. *5*

*Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.,*
    *No. 17-CV-1734, 2021 WL 982726 (D. Del. Mar. 16, 2021)* ................................ *17*

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.,*
    *12-CV-441, 2014 WL 2622240 (D. Del. June 11, 2014)* ..................................... *18*

*Sun Microsystems, Inc. v. Versata Enterprises, Inc.,*
    *630 F. Supp. 2d 395 (D. Del. 2009)* ......................................... *6, 15, 16, 17*

*Targus Int'l LLC v. Victorinox Swiss Army, Inc.*,
  20-CV-464, 2021 WL 2291978 (D. Del. June 4, 2021) ..................................................... 15, 18

*Tigo Energy Inc. v. SMA Solar Tech. Am. LLC*,
  22-CV-915, 2024 WL 964203 (D. Del. Mar. 5, 2024) ........................................................ 15, 17

*TSMC Tech., Inc. v. Zond, LLC*,
  14-CV-721, 2015 WL 661364 (D. Del. Feb. 13, 2015) ............................................................ 10

*Tyco Fire Prod. LP v. Victaulic Co.*,
  777 F. Supp. 2d 893 (E.D. Pa. 2011) ............................................................................................ 12

*Williams v. Lendkey Techs. Inc.*,
  16-CV-3101, 2017 WL 11608532 (D.N.J. Mar. 23, 2017) ....................................................... 13

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
  868 F. Supp. 2d 376 (D. Del. 2012) .............................................................................................. 18

## STATUTES

*35 U.S.C. § 102(a)(2) (AIA)* ..................................................................................................... 19

*35 U.S.C. § 102(e) (pre-AIA)* ..................................................................................................... 19

*35 U.S.C. § 288* ............................................................................................................................. 7

*Fed. R. Civ. P. 12(f)* ...................................................................................................................... 6

## I.    NATURE AND STAGE OF THE PROCEEDINGS

On February 1, 2024, Sonos, Inc. ("Sonos") filed its original complaint against Linkplay Technology Inc. ("Linkplay") for infringement of U.S. Patent Nos. 7,571,014 ("'014 Patent"), 9,164,532 ("'532 Patent"), 9,213,357 ("'357 Patent"), 10,541,883 ("'883 Patent"), and 10,853,023 ("'023 Patent") (collectively, the "Asserted Patents").  D.I. 1.  Linkplay filed its original Answer on March 28, 2024 that included 13 affirmative defenses and 15 counterclaims. *See* D.I. 21.

On April 17, 2024, Sonos filed its First Amended Complaint that added Linkplay Technology, Inc., Nanjing as a defendant.  D.I. 22.  The next day, Sonos filed a motion to dismiss all of Linkplay's counterclaims for being deficiently pled.  D.I. 23.  After Sonos's agreement to a second unconditioned extension of time (D.I. 24), Linkplay filed its amended pleading on May 17, 2024 with the same 13 affirmative defenses and 15 counterclaims from its original pleading without adequately addressing the deficiencies that Sonos identified in its prior motion to dismiss. D.I. 39.  But, Linkplay's amended pleading mooted Sonos's prior motion to dismiss.  D.I. 41.

Sonos now moves under Rule 12(f) to strike Linkplay's (i) pleading of 35 U.S.C. § 288 in its *Sixth* defense, (ii) *Seventh*, *Eighth, Tenth, Eleventh, Twelth* [*sic*], and *Thirteenth* defenses in their entirety, (iii) pleading of indirect infringement in *Count Five* of its counterclaims (*see* D.I. 39, ¶84, 86), and (iv) pleading of invalidity in *Count Six* except for its pleading of improper inventorship (*see id.*, ¶91, 96).  Sonos also moves under Rule 12(b)(6) to dismiss *Counts One-Four* and *Counts Seven-Fifteen* of Linkplay's counterclaims.

## II.    SUMMARY OF ARGUMENT

Many of Linkplay's affirmative defenses and counterclaims are insufficient on their face and should either be dismissed under Rule 12(b)(6) or stricken under Rule 12(f) to clean up Linkplay's amended pleading, streamline litigation, and avoid unnecessary forays into immaterial

matters.  Linkplay's amended pleading is deficient for at least the reasons below.

**First**, Linkplay has no factual basis for its pleading of 35 U.S.C. § 288 in its *Sixth* defense (D.I. 39, p. 27) because no claim of an Asserted Patent has ever been found invalid.  Thus, Linkplay's § 288 allegation should be stricken from its *Sixth* defense.

**Second**, each of Linkplay's noninfringement counterclaims (i.e., *Counts One-Five*) includes an allegation of no indirect infringement that is nothing more than a barebones legal conclusion with no factual support whatsoever.  Moreover, with respect to *Counts One-Four*, Linkplay fails to identify a single claim limitation of an Asserted Patent that is purportedly not satisfied by the accused devices.  Thus, Linkplay's allegation of no indirect infringement in *Count Five* should be stricken and *Counts One-Four* should be dismissed entirely.

**Third**, with the exception of Linkplay's improper inventorship allegation in *Count Six*[1], Linkplay's remaining invalidity allegations in *Count Six* and the entirety of its invalidity allegations in *Counts Seven-Ten* amount to nothing more than barebones legal conclusions that fail to give Sonos any notice as to what Linkplay's invalidity counterclaims truly are.  Thus, *Count Six* should be stricken with the exception of Linkplay's improper inventorship allegation, and *Counts Seven-Ten* should be dismissed entirely.

**Fourth**, each of Linkplay's unenforceability counterclaims (i.e., *Counts Eleven-Fifteen*) fails to allege facts sufficient to show that Linkplay has a plausible claim for relief and is made worse by the fact that each such counterclaim is premised on a conglomeration of eight affirmative defenses, several of which cannot possibly support a claim that a patent is unenforceable.  *E.g.*, D.I. 39, p. 57.  *Counts Eleven-Fifteen* should therefore be dismissed, and Linkplay's affirmative

---

[1] Linkplay's improper inventorship allegation with respect to the '014 Patent falls well short of actually establishing improper inventorship.  *See* D.I. 39, ¶96.  Nevertheless, Sonos does not challenge the sufficiency of this particular theory at the pleading stage.

defenses that correspond to some of these unenforceability counterclaims (i.e., *Seventh-Eighth* and *Tenth-Thirteenth* defenses) should be stricken for the same reasons.

## III.     STATEMENT OF FACTS

### A.     Linkplay's Amended Pleading

Linkplay filed its amended pleading on May 17, 2024 without adequately addressing the deficiencies in Linkplay's original pleading that Sonos previously identified in its original motion to dismiss.  D.I. 39; D.I. 23.

In particular, Linkplay's *Sixth* defense alleges that "Sonos's claims and prayer for relief are barred in whole or in part by 35 U.S.C. §§ 286, 287, and/or 288."  D.I. 39, p. 27.  Linkplay's *Seventh-Eighth* and *Tenth-Thirteenth* defenses set forth various defenses that correspond to some of the unenforceability counterclaims discussed below, including equitable estoppel, waiver, inequitable conduct, prosecution laches, prosecution-history estoppel, and unclean hands.

Linkplay also pleads a trio of counterclaims against each Asserted Patent: (i) noninfringement, (ii) invalidity, and (iii) unenforceability.  *Counts One-Five* are Linkplay's noninfringement counterclaims, *Counts Six-Ten* are Linkplay's invalidity counterclaims, and *Counts Eleven-Fifteen* are Linkplay's unenforceability counterclaims.

Specifically, each of Linkplay's noninfringement counterclaims includes the same barebones allegation of no indirect noninfringement.  *See* D.I. 39, ¶58, 65, 72, 79, 86.  Further, with respect to *Counts One-Four*, Linkplay fails to identify a single patent claim limitation that is purportedly not satisfied by the accused devices.

Likewise, each of Linkplay's invalidity counterclaims (i.e., *Counts Six-Ten*) include a pleading of §§101, 102, 103, 112, and non-statutory doctrine of obviousness-type double-patenting invalidity that is formulaically barebones.  *Id.*, ¶91-95, 100-104, 108-112, 116-120, 124-128.

Linkplay's unenforceability counterclaims (i.e., *Counts Eleven-Fifteen*) fare no better.  For

each unenforceability counterclaim, Linkplay combines an undefined set of eight of its thirteen defenses together without setting forth how each element of each defense is allegedly satisfied, much less how such defense results in unenforceability.  *See, e.g., id.*, ¶132-139.

**B.    Sonos's Prior Cases**

Throughout its pleading, Linkplay relies heavily on prior Sonos cases involving third parties (D&M Holdings Inc. and Google LLC) without a proper understanding of the disputed issues in those cases or their relevancy to the present case against Linkplay.  *See, e.g.*, D.I. 39, p. 27-31, 34, 39, 42, 44-47, 50, 52-53, 55-72.  Thus, Sonos provides a brief summary of these cases.

First, in *Sonos, Inc. v. D&M Holdings Inc.*, Sonos accused D&M of infringing twelve Sonos patents, including the '014  and '357 Patents asserted here.  14-CV-1330, D.I. 415 (D. Del. Mar. 7, 2016).  While many of the Sonos patents asserted in the *D&M* case are related to many of the Asserted Patents in this litigation, ***none*** of the Sonos patents asserted against D&M were found invalid or unenforceable.  In fact, this Court held a bellwether trial involving the '014 Patent and U.S. Pat. Nos. 8,588,949 and 9,195,258[2], and the jury sided with Sonos, finding all three Sonos patents willfully infringed and not invalid.  *Id.*, D.I. 528.

Second, in *Certain Audio Players and Controllers*, Inv. No. 337-TA-1191, Sonos accused Google of infringing five Sonos patents before the ITC, including, *inter alia*, (i) the '949 and '258 Patents that were previously asserted in the *D&M* litigation, (ii) U.S Patent No. 10,209,953, which is related to and shares a common specification with the '258 Patent and both the '532 and '357 Patents asserted in this case, and (iii) U.S. Patent No. 10,439,896, which is related to the '883 Patent asserted in this case.  After the evidentiary hearing, the chief administrative law judge ("CALJ") found that each of the five Sonos patents was infringed by one or more Google products

---

[2] The '949 Patent claims priority to the '014 Patent, and the '258 Patent is related to and shares a common specification with both the '532 and '357 Patents asserted in the present case.

and not invalid. *Sonos, Inc. v. Int'l Trade Comm'n*, No. 2022-1421, 2024 WL 1507605, at *1 (Fed. Cir. Apr. 8, 2024). During the ITC Investigation, however, Google introduced confidential "redesigns" for its products, and the CALJ found that these redesigns were noninfringing alternatives. *Id.* The ITC Commission thereafter adopted the CALJ's finding and entered a limited exclusion order against Google. *Id.* The Federal Circuit recently affirmed the ITC's decision. *Id.*

Lastly, in *Sonos, Inc. v. Google LLC*, 20-CV-06754 before the Northern District of California, Sonos accused Google of infringing four additional Sonos patents. ***None*** of the four Sonos patents asserted in the Northern District are related to ***any*** Asserted Patent in this case.

Certain decisions from the *Google* case are also riddled with legal errors and are currently under appeal. For example, the Northern District held a jury trial on two of the four Sonos patents referred to as the "zone-scene patents," and the jury found those zone-scene patents not invalid and infringed by certain of Google's products. *Sonos, Inc. v. Google LLC*, 20-CV-06754, D.I. 774 (N.D. Cal. May 26, 2023). The court, however, overrode the jury's verdict by using a rarely-invoked prosecution laches defense to render both zone-scene patents unenforceable. *Sonos, Inc. v. Google LLC*, 20-CV-06754, 2023 WL 6542320, at *17 (N.D. Cal. Oct. 6, 2023). The Northern District's opinion primarily relied on two incorrect grounds.

First, despite acknowledging that "Sonos diligently prosecuted patent applications in the interim," the court held that Sonos had unreasonably and inexcusably delayed by waiting until 2019 to file a continuation application that claimed a specific, narrow implementation of the zone scene functionality after originally filing the provisional application for that patent family in 2006. *Id.* The Court held that 13 years was too long to wait to claim this specific aspect. *Id.*

Second, the court held that Google suffered prejudice on the basis that "Sonos learned of Google's specific product plans and *still waited five years* to frame claims to read on those

products." *Id.*, at *20 (emphasis original).  The court's opinion was based on its personal view that Sonos had not disclosed the claimed overlapping zone scenes functionality until 2019 by improperly amending the specification to add new matter (despite that matter being found in the incorporated by reference provisional application and original 2007 non-provisional application). *Id.*, at *18.  To support this view, the court contradicted, and vacated, its earlier summary judgment order concluding that the zone-scene patents had adequate written description for the claimed overlapping zone scenes.  *Id.*, at *27.

## IV.    LEGAL STANDARDS

Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Motions to strike serve to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."  *Sun Microsystems, Inc. v. Versata Enterprises, Inc.*, 630 F. Supp. 2d 395, 402 (D. Del. 2009) (citations omitted).  A court is not required to accept a pleading with mere "bare bones conclusory allegations" and may accordingly strike inadequately pled defenses and counterclaims.  *Id.*, at 408 (citations omitted).

Further, a party alleging unenforceability must "plead with particularity those facts which support the claim" pursuant to the heightened standard under Rule 9(b).  *See Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*, No. 15-CV-137, 2017 WL 1349175, at *4 (D. Del. Apr. 10, 2017).  As a result, unenforceability affirmative defenses and counterclaims "rise and fall together."  *Id.*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A mere formulaic recitation of a cause of action's elements or a bare-bones legal conclusion devoid of factual support does not satisfy the *Twombly/Iqbal* standard. *See, e.g.*, *EMC Corp. v. Zerto, Inc.*, 12-CV-956, 2014 WL 3809365, at *2 (D. Del. July 31, 2014). Instead, a claim must be pled with enough clarity to put the defendant on notice of what is meant to be put at issue and why. *See Idenix Pharms., Inc. v. Gilead Scis.*, Inc., 13-CV 13-1987, 2014 WL 4222902, at *7 (D. Del. Aug. 25, 2014). "Courts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint." *Princeton Digital Image Corp. v. Konami Digital Ent. Inc.*, 12-CV-1461, 2017 WL 239326, at *3 (D. Del. Jan. 19, 2017).

## V.    ARGUMENT

Many of Linkplay's affirmative defenses and counterclaims are insufficient on their face and should either be stricken under Rule 12(f) or dismissed under Rule 12(b)(6). For instance, Linkplay has no factual basis for its pleading of §288 in its *Sixth* defense. Moreover, nearly all of Linkplay's counterclaims lack any factual support at all and numerous of them fail to even recite the elements of the respective cause of action that underlies the counterclaim. Linkplay's defenses that correspond to several of its unenforceability counterclaims suffer similar deficiencies.

### A.    There Is No Factual Basis for Linkplay's Pleading of §288

In its *Sixth* defense, Linkplay alleges "Sonos's claims and prayer for relief are barred in whole or in part by 35 U.S.C. §§ 286, 287, ***and/or 288***." D.I. 39, p. 27.[3] The plain language of § 288 requires, *inter alia*, a showing that a claim of an asserted patent has been found invalid "before the commencement of the suit." 35 U.S.C. § 288. However, there is no possible factual basis for Linkplay's § 288 defense, as ***no*** claim of an Asserted Patent has ***ever*** been found invalid.

---

[3] Emphasis has been added throughout unless noted otherwise.

*See, e.g.*, *Sonos, Inc. v. D&M Holdings Inc.*, No. 14-CV-1330, 2016 WL 4249493, at *4 (D. Del. Aug. 10, 2016) (striking § 288 defense as no determination of invalidity was made prior to commencement of suit); *Cordance Corp. v. Amazon.com, Inc.*, 631 F. Supp. 2d 484, 503 (D. Del. 2009) (same). Thus, Linkplay's pleading of § 288 in its *Sixth* defense should be stricken.

> **B.      Each of Linkplay's Noninfringement Counterclaims Is Deficient**

Linkplay's noninfringement counterclaims (i.e., *Counts One-Five*) must be pled according to the *Twombly/Iqbal* standard. *See, e.g.*, *Princeton*, 2017 WL 239326, at *5. The Court should dismiss *Counts One-Four* and strike Linkplay's allegation of no indirect infringement in *Count Five* because each falls well short of the *Twombly/Iqbal* standard.

> **1.      Linkplay's Allegation of No Direct Infringement in *Counts One-Four* Are Barebones and Conclusory**

Linkplay's allegation of no direct infringement for each of *Counts One-Four* reduces to an allegation that (i) Sonos asserted a ***related*** patent in the ITC Investigation against third party Google, and (ii) "Linkplay's accused products do not directly infringe… for at least the reasons Google's products were found not to infringe… and because [of] the different technology Linkplay independently developed and implemented in its products." *See* D.I. 39, ¶¶57, 64, 71, 78. Such an allegation does not state a plausible claim for relief for various reasons.

***First***, it is a *non sequitur* for Linkplay to allege that its products do not infringe the Asserted Patents for the same reason that certain products of another company, Google, do not infringe different patents. Indeed, Linkplay does not even allege that its own products operate in the same way as Google's redesigned products. This makes sense: there is no possible way Linkplay could know how Google's products operate on a source-code level because Google's redesigns remain confidential. This also makes sense as Linkplay repeatedly alleges it "independently developed" the accused products (*e.g.*, D.I. 39, ¶12) and "[t]he technologies Linkplay uses were all

independently developed by Linkplay" (*id.*, ¶35), thereby distinguishing its own products and technology from Google's.[4, 5]

**Second**, regardless of any alleged coincidental similarities between the accused Linkplay products and Google's redesigned products, *Counts One-Four* make **no** reference to any claim limitation of any Asserted Patent, much less allege facts to support an assertion that Linkplay's devices do not satisfy a particular claim limitation of an Asserted Patent. Thus, *Counts One-Four* fail to satisfy the *Twombly/Iqbal* pleading standard. *See, e.g.*, *DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, 23-CV-675, 2024 WL 639991, at *3 (D. Del. Feb. 15, 2024) (concluding counterclaim of noninfringement that "identifies particular limitations that [defendant's] product does not satisfy" passed *Twombly/Iqbal* pleading standard).

In summary, Linkplay's noninfringement allegations in each of *Counts One-Four* that rest on the functionalities of a third party's products instead of Linkplay's "independently developed" products are simply not plausible, and Linkplay's failure to identify a single claim limitation from an Asserted Patent that is purportedly not satisfied does not provide adequate notice of Linkplay's noninfringement claims to Sonos.

## 2. Linkplay's Allegation of No Indirect Infringement in *Counts One-Five* Are Barebones and Conclusory

Linkplay's allegation of no indirect infringement for each of *Counts One-Five* fails to even recite the required elements of contributory or induced infringement, much less facts that plausibly

---

[4] Linkplay's allegation that the ITC "found that Google's certain products do not infringe" (*see id.*, p. 42 at ¶57) is misleading. The ITC determined that the five Sonos patents asserted against Google were **infringed** by one or more Google products, while certain of Google's "redesigns" of its products did not infringe. *Supra* §III.B.

[5] Further highlighting Linkplay's nonsensical non-infringement pleading is Linkplay's allegation that it does not practice Sonos's group volume patent ('014 Patent) for the same reason that Google's redesign does not infringe the related '949 patent. Google's redesign in this respect was to remove the feature altogether – Linkplay has not removed its group volume feature.

demonstrate indirect infringement cannot be satisfied.  *See* D.I. 39, ¶58, 65, 72, 79, 86.  Thus, these counterclaims are plainly insufficient to state a claim for no indirect infringement.  *See, e.g.*, *TSMC Tech., Inc. v. Zond, LLC*, 14-CV-721, 2015 WL 661364, at *7 (D. Del. Feb. 13, 2015).

Moreover, with respect to each of *Counts One-Four*, Linkplay's allegation of no indirect infringement relies on the same deficient allegation of no direct infringement discussed above.  Thus, each of *Counts One-Four* is insufficient to state a claim of no indirect infringement for the additional reasons discussed above.

### C.    Each of Linkplay's Invalidity Counterclaims Is Deficient

Linkplay's invalidity counterclaims (i.e., *Counts Six-Ten*) must also be pled according to the *Twombly/Iqbal* standard.  *See, e.g.*, *EMC*, 2014 WL 3809365, at *2.  But, as before, with the exception of Linkplay's allegation of improper inventorship in *Count Six*, the remaining allegations in *Count Six* and the entirety of *Counts Seven-Ten* fall woefully short of this standard.

For instance, each of Linkplay's invalidity counterclaims amounts to an allegation that:

> the claims of the [Asserted Patent] are invalid for failure to comply with **one or more** of the requirements of United States Code, Title 35, including **without limitation** 35 U.S.C. §§ 101, 102, 103, and 112, the non-statutory doctrine of obviousness-type double-patenting, improper inventorship, **and/or** the rules, regulations, and laws pertaining thereto.

D.I. 39, ¶91, 100, 108, 116, 124.  But, with the exception of Linkplay's allegation of improper inventorship in *Count Six* (*see id.*, ¶96)*,* each of Linkplay's remaining invalidity allegations in *Count Six* and each of Linkplay's invalidity allegations in *Counts Seven-Ten* is a textbook example of a barebones, legal conclusion of invalidity devoid of any factual support, which does not state a plausible claim for relief.  *See, e.g.*, *EMC*, 2014 WL 3809365, at *2 (dismissing invalidity counterclaims worded similar to Linkplay's invalidity counterclaims because "they are merely bare-bones legal conclusions devoid of any supporting factual allegations.").

Indeed, each of *Counts Six-Ten* fails to identify a single prior art reference that could

support an invalidity claim under §§ 102 or 103 and fails to identify any claim limitation of any Asserted Patent that purportedly does not satisfy a specific aspect of § 112. *See, e.g.*, *CryoLife, Inc. v. C.R. Bard, Inc.*, 14-CV-559, 2015 WL 1069397, at *4 (D. Del. Mar. 10, 2015) (concluding invalidity counterclaim that identified specific statutory sections, identified invalidity prior art, and specifically alleged lack of written description passed *Twombly/Iqbal* pleading standard).

As a representative example of Linkplay's deficient pleading of §§ 102 or 103 invalidity, Linkplay merely alleges in *Count Six* that the '014 Patent is invalid because of:

> the mounting prior art cited in the '014 patent, cited in other Sonos patents claiming priority to or being claimed priority by or otherwise related to the '014 patent, cited in the Reexamination of the '014 patent, and cited by Sonos's opponents, such as D&M Holdings and Google, in Sonos patent litigations asserting the '014 patent or its related patents.

D.I. 39, ¶93. Linkplay advances similar allegations in *Counts Seven-Ten* for the remaining Asserted Patents. Not only does Linkplay fail to identify a single prior art reference here, but there is no factual basis for this pleading since (i) the USPTO allowed the patent over the art cited on its face, (ii) a jury found the reexamined '014 Patent allowable over numerous prior art, including prior art cited in the prosecution history, and (iii) ***none*** of the other Sonos patents asserted against D&M or Google that are asserted or related to an Asserted Patent in this case has ever been found invalid. *Supra* §III.B.

Each of *Counts Six-Ten* also fails to identify specific "Sonos patents or patent applications that claim similar subject matter" or any "additional prior art" (D.I. 39, ¶95, 104, 112, 120, 128) that could support an obviousness-type double-patenting claim and fails to set forth any facts that could support the two-step *Alice* test for §101. *See id.*, ¶92, 101, 109, 117, 125.

Coupling Linkplay's factually-bare allegations with the broad, open-ended language of Linkplay's counterclaims – "one or more," "without limitation," "and/or" – leaves the Court and

Sonos left guessing as to the true nature of Linkplay's counterclaims. But "*Twombly* and *Iqbal* do not sanction the need for such guesswork." *Idenix*, 2014 WL 4222902, at *7. Thus, the Court should strike Linkplay's invalidity allegations in *Count Six* with the exception of its improper inventorship allegation, and dismiss *Counts Seven-Ten* entirely.

### D.   Linkplay's Unenforceability Counterclaims and Affirmative Defenses That Correspond to Some of Its Unenforceability Counterclaims Are Deficient

Linkplay's unenforceability counterclaims (i.e., *Counts Eleven-Fifteen*) must also be pled according to the *Twombly/Iqbal* standard. *See, e.g.*, *Easton Tech. Prods., Inc. v. FeraDyne Outdoors, LLC*, 18-CV-1222, 2019 WL 1513463, at *1 (D. Del. Apr. 8, 2019); *RAH Color Techs. LLC v. Ricoh USA Inc.*, 194 F. Supp. 3d 346, n.2 (E.D. Pa. 2016) (*citing Tyco Fire Prod. LP v. Victaulic Co.,* 777 F. Supp. 2d 893, 904 (E.D. Pa. 2011)).   However, each of Linkplay's unenforceability counterclaims fails to state a plausible claim for relief for various reasons.

***First***, each of Linkplay's unenforceability counterclaims reduces to an allegation that a given Asserted Patent is "unenforceable for ***at least one*** of the grounds for unenforceability Linkplay has pleaded in its affirmative defenses to Sonos's infringement claims, including lack of standing, equitable estoppel, waiver, license/exhaustion, inequitable conduct, prosecution laches, prosecution-history estoppel, ***and/or*** unclean hands." D.I. 39, ¶132, 140, 148, 156, 164. In this way, each of Linkplay's unenforceability counterclaims amounts to a "catch all" allegation premised on some undefined combination of 8 affirmative defenses. Essentially, Linkplay asks the Court and Sonos to speculate as to which one or more of its 8 affirmative defenses could plausibly give rise to each of Linkplay's five unenforceability counterclaims. As such, these counterclaims fall well short of the *Twombly/Iqbal* standard and should be dismissed for this reason alone. *See, e.g.*, *In re Ojo*, 21-CV-11357, 2021 WL 3732904, at *3 (D.N.J. Aug. 23, 2021) (finding Claimant's "catch all" claims deficient because "[Claimant] cannot simply allege that a

[party] committed dozens of wrongs, without adequately explaining the factual circumstances underlying each claim."); *Williams v. Lendkey Techs. Inc.*, 16-CV-3101, 2017 WL 11608532, at *1 (D.N.J. Mar. 23, 2017) ("Dismissal… is appropriate when a complaint includes claims that are 'broad and vague' rather than 'simple, concise, and direct,' or when it leaves [a] '[party] having to guess what of the many things discussed constituted a cause of action.") (citations omitted).

**Second**, Linkplay's reliance on its lack of standing and license/exhaustion affirmative defenses as bases for each unenforceability counterclaim is legally improper because neither is a recognized cause of action, much less could possibly amount to unenforceability of a patent. *See, e.g.*, *Cont'l Auto. Sys., Inc. v. Nokia Corp.*, 21-CV-345, 2021 WL 5299243, at *3 (D. Del. Nov. 15, 2021) ("[P]atent exhaustion is a defense to patent infringement, not a cause of action.") (*quoting ExcelStor Techs., Inc. v. Papst Licensing GmbH & Co. KG*, 541 F.3d 1373, 1376 (Fed. Cir. 2008)); *Coronado v. Chevy Chase Bank, FSB*, 554 F. App'x 549, 551 (9th Cir. 2014) ("[L]ack of standing is not a cause of action."); *see also OrthoPediatrics Corp. v. Wishbone Med., Inc.*, 20-CV-929, 2022 WL 4529382, at *3 (N.D. Ind. Sept. 28, 2022) ("[L]ack of standing is not [even] an affirmative defense under federal law.") (citations omitted).

**Third**, to the extent Linkplay's unenforceability counterclaims rely on its affirmative defenses of prosecution laches (i.e., *Eleventh* defense) and prosecution-history estoppel (i.e., "*Twelth* [*sic*]" defense), such counterclaims are not sufficiently pled according to the *Twombly/Iqbal* standard.

In particular, as shown below, Linkplay's prosecution-history estoppel defense is nothing more than a generic, barebones legal conclusion with no factual support:

> On information and belief, due to admissions and statements made to the United States Patent and Trademark Office during the prosecution of the applications that resulted in the asserted patents or related patent applications, Sonos is estopped from construing a valid and enforceable claim, if any, of the asserted patents as

infringed literally or under the doctrine of equivalents by the accused products. D.I. 39, p. 31. Simply put, Linkplay fails to provide any notice as to what "admissions" or "statements" were made during prosecution of any Asserted Patent (or related application) that would render any Asserted Patent unenforceable, much less render all five Asserted Patents unenforceable. Thus, to the extent Linkplay's unenforceability counterclaims rely on its prosecution-history estoppel defense, such counterclaims fail to state a plausible claim for relief and should be dismissed. The corresponding prosecution-history estoppel defense (i.e., "*Twelfth* [*sic*]" defense) should also be stricken because unenforceability affirmative defenses and counterclaims "rise and fall together." *See Int'l Bus. Machines Corp.*, 2017 WL 1349175, at *4.

Turning to Linkplay's prosecution laches defense, Linkplay fails to even allege facts to satisfy each element of such a defense. In this regard, Linkplay fails to sufficiently plead that (1) Sonos's delay in prosecution was "unreasonable and inexcusable under the totality of circumstances," and (2) Linkplay "suffered prejudice attributable to the delay. " *Personalized Media Commc'ns, LLC v. Apple Inc.*, 57 F.4th 1346, 1354 (Fed. Cir. 2023).

Instead, Linkplay merely alleges that "[f]our out of the five asserted patents were filed between eight and fifteen years after the first priority application" (D.I. 39, p. 30) and repeatedly relies on an irrelevant prior case between Sonos and Google before the Northern District of California. *Id.*, ¶¶133, 141, 149, 157, 165. As discussed, the *Google* case involved Sonos patents that are neither asserted nor related to any Asserted Patent in this case against Linkplay. *Supra* §III.B. And the facts surrounding the *Google* patents differ significantly from the facts here.

For instance, the Northern District's ruling on prosecution laches was based in part on the incorrect conclusion that Google suffered prejudice because "Sonos learned of Google's specific product plans and *still waited five years* to frame claims to read on those products." *Id.* But here,

Linkplay fails to explain how any alleged delay prejudiced or injured Linkplay, which is likely because a significant number of the accused products (i.e., the WiiM product line) were released *after* the issuance date of *each* asserted patent. *See* Ex. 2. In fact, the latest-issued Asserted Patent (the '023 Patent) issued on December 1, 2020, and the earliest released WiiM product (the WiiM Mini) was launched 9 months later on September 26, 2021. Thus, Linkplay's reliance on the non-binding opinion of the Northern District — which is at odds with long-established Federal Circuit caselaw and is currently under appeal — is misplaced.

Accordingly, to the extent Linkplay's unenforceability counterclaims rely on its prosecution laches defense, such counterclaims fail to state a plausible claim for relief and should be dismissed, and the corresponding prosecution laches defense should be stricken for the same reason. *See Symbol Techs.*, 609 F. Supp. 2d at 357; *Sun Microsystems*, 630 F. Supp. 2d at 409-10.

*Fourth*, the remaining four affirmative defenses that apparently are the bases of each unenforceability counterclaim – namely, equitable estoppel, waiver, inequitable conduct, and unclean hands (i.e., Linkplay's *Seventh, Eighth, Tenth*, and *Thirteenth* defenses) – must be pled with "particularity" under Rule 9(b). *See, e.g.*, *Tigo Energy Inc. v. SMA Solar Tech. Am. LLC*, 22-CV-915, 2024 WL 964203, at *3 (D. Del. Mar. 5, 2024); *Targus Int'l LLC v. Victorinox Swiss Army, Inc.*, 20-CV-464, 2021 WL 2291978, at *5 (D. Del. June 4, 2021); *Bench Walk Lighting LLC v. Everlight Elecs. Co.*, 20-CV-49, 2020 WL 5128086, at *1 (D. Del. Aug. 31, 2020); *Bayer CropScience AG v. Dow AgroSciences LLC,* 10-CV-1045, 2011 WL 6934557, at *3 (D. Del. Dec. 30, 2011). To the extent Linkplay's unenforceability counterclaims rely on any of these four defenses, such counterclaims fail to satisfy this heightened pleading standard as Linkplay's pleading fails to set forth how each element for each of these defenses is allegedly satisfied, as discussed further below.

### 1. Equitable Estoppel

Equitable estoppel requires showing: (i) Sonos "communicate[d] something in a misleading way, either by words, conduct or silence"; (ii) Linkplay "relie[d] upon that communication"; and (iii) Linkplay "would be harmed materially if [Sonos] is later permitted to assert any claim inconsistent" with the earlier communication. *Sun Microsystems,* 630 F. Supp. 2d at 408; *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 312 F. Supp. 2d 639, 641 (D. Del. 2004).

However, Linkplay's equitable estoppel defense fails to provide any notice as to what Sonos communicated to Linkplay in a ***misleading*** way and how any alleged communication impacted Linkplay. In particular, Linkplay alleges that its communications with Sonos somehow "led Linkplay to reasonably infer that Sonos does not intend to enforce its patents against Linkplay and Linkplay relied on that inference." D.I. 39, pp. 27-28, ¶136. But, there is no factual basis for Linkplay's alleged reliance on Sonos's "communication" because Linkplay concedes that it met with Sonos for the first time in January 2023 (*id.*, ¶31) — ***after*** Linkplay already released a number of accused products with the infringing functionalities. Moreover, by its own admission (*id.*, ¶136), "[Linkplay] could not have been misled about [Sonos's] intentions to enforce or not enforce [Sonos's] patent rights, since [Linkplay allegedly] ha[d] no idea those rights existed" until December 2023, when Sonos sent a notice letter to Linkplay. *Philips Elecs. N. Am. Corp.*, 312 F. Supp. 2d at 642.

Linkplay also identifies Sonos's alleged "history of first reaching out to potential technology partners for help and then suing them for patent infringement after learning more about the intricate details of their products and technologies." D.I. 39, pp. 27-28; *see also, e.g., id.*, ¶136. However, Linkplay fails to allege that Sonos communicated this purported "history" to Linkplay, much less explain how such communication impacted Linkplay.

Thus, to the extent Linkplay's unenforceability counterclaims rely on its equitable estoppel

defense, such counterclaims are not pled with "particularity" under Rule 9(b) and should be dismissed, and the corresponding equitable estoppel defense should be stricken for the same reason. *See, e.g.*, *Philips Elecs.*, 312 F. Supp. 2d at 642; *Sun Microsystems*, 630 F. Supp. 2d at 408; *Bayer CropScience,* 2011 WL 6934557, at *3.

### 2.  Waiver

A waiver defense requires a showing of (i) "an existing right," (ii) "knowledge of the right," and (iii) "an actual intention to relinquish the right."  *See Tigo Energy*, 2024 WL 964203, at *9 (citation omitted).  However, the allegations for Linkplay's waiver defense are identical to its allegations for equitable estoppel defense discussed above.  *See* D.I. 39, p. 28-29; *see also, e.g., id.*, ¶136.  These allegations fail to provide any notice as to what "existing right" is at issue and what facts tend to show that Sonos had an "actual intention to relinquish" this existing right.

Moreover, as with its equitable estoppel defense, Linkplay's waiver defense is not even plausible based on its own admission that it (i) did not meet with Sonos until January 2023 (*id.*, ¶31) — after Linkplay released a number of accused products with the infringing functionalities, and (ii) according to Linkplay, "[n]early a year of extensive communications between the parties ***never*** centered on Sonos's IP or Linkplay's alleged infringement, until a sudden and dramatic change of course in December 2023" when Sonos sent a notice letter to Linkplay.  *Id.*, ¶136.  However, "[Sonos]'s silence is not enough to show that it had an 'actual intention' to relinquish its patent rights or that it 'made an affirmative grant of consent or permission' to [Linkplay's] conduct."  *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, No. 17-CV-1734, 2021 WL 982726, at *11 (D. Del. Mar. 16, 2021).  Thus, to the extent Linkplay's unenforceability counterclaims rely on its waiver defense, such counterclaims are not pled with "particularity" under Rule 9(b) and should be dismissed, and the corresponding waiver defense should be stricken for the same reason.  *See, e.g.*, *Tigo Energy*, 2024 WL 964203, at *9; *Sun Microsystems*, 630 F.

Supp. 2d at 409.

### 3. Inequitable Conduct

An inequitable conduct defense requires a showing that would allow this Court to "reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Targus Int'l*, 2021 WL 2291978, at *5 (*quoting Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328–29 (Fed. Cir. 2009)).

Yet, for its inequitable conduct defenses, Linkplay recycles the ***same*** general allegations against all five Asserted Patents, despite them covering different subject matter and being prosecuted by different attorneys at different points in time. *See* D.I. 39, pp. 29-30, ¶¶133-35, 141-43, 149-51, 157-59, 165-67. In this way, Linkplay's pleading fails to "identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO" for each Asserted Patent. *Targus Int'l*, 2021 WL 2291978, at *5. Judge Andrews, for example, has repeatedly found that an inequitable conduct claim that lacks ***any*** of these specific elements fails to satisfy the heightened pleading standard under Rule 9(b). *See, e.g., St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 12-CV-441, 2014 WL 2622240, at *2 (D. Del. June 11, 2014); *XpertUniverse, Inc. v. Cisco Sys., Inc*., 868 F. Supp. 2d 376, 381-83 (D. Del. 2012); *Analog Devices, Inc. v. Xilinx, Inc.*, 19-CV-2225, 2021 WL 466859, at *4 (D. Del. Feb. 9, 2021); *EMC Corp. v. Pure Storage, Inc.*, 13-CV-1985, 2014 WL 5795557, at *2 (D. Del. Nov. 5, 2014).

Moreover, Linkplay alleges "Sonos intentionally 'buried' the [purportedly] relevant prior art by over-disclosing non-prior art and/or nonrelevant prior art in the [Asserted Patent]" based on Linkplay's understanding that "many of these disclosed references have ***publication dates*** later than the filing date of the earliest non-provisional, bringing their relevance into question." D.I. 39, ¶¶135, 143, 151, 159, 167 (copying and pasting the same identical allegation from ¶159). This

allegation is legally flawed for multiple reasons. First, Linkplay doesn't identify what purportedly relevant prior art it is even referring to.  Second, this District has held that merely "burying" a relevant reference in a long list of citations alone is insufficient as a matter of law to support a claim of inequitable conduct.  *See Symbol Techs., Inc.*, 609 F. Supp. 2d at 358.  Third, a publication date of a reference is not determinative of whether the reference qualifies as prior art under §102. 35 U.S.C. §102(e) (pre-AIA) (providing that the *filing* date of a reference is used to determine whether the reference qualifies as prior art); *see also* 35 U.S.C. §102(a)(2) (AIA).

Thus, to the extent Linkplay's unenforceability counterclaims rely on its inequitable conduct defense, such counterclaims are not pled with "particularity" under Rule 9(b) and contain obvious legal flaws requiring their dismissal and requiring striking the corresponding inequitable conduct defense.

### 4.   Unclean Hands

An unclean hands defense requires a showing that: (i) Sonos "is guilty of conduct involving fraud, deceit, unconscionability, or bad faith… directly related to the matter in issue," (ii) Sonos's conduct "injures" Linkplay, and (iii) Sonos's conduct also "affects balance of equities" between Sonos and Linkplay.  *See Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*, 636 F. Supp. 3d 483, 488 (D. Del. 2022) (citations omitted).  The alleged conduct "must have an immediate and necessary relationship to the equity which [Sonos] seeks to obtain in the matter in litigation."  *Id.*

However, Linkplay's unclean hands defense fails to provide any notice as to what alleged "conduct involving fraud, deceit, unconscionability, or bad faith" is at issue for unclean hands and how this alleged conduct impacted Linkplay.  In particular, for its unclean hands defense, Linkplay relies on (i) Sonos's alleged "dealings with Linkplay" set forth in paragraphs 11-46 of Linkplay's pleading, (ii) Sonos's alleged "history of first reaching out to potential technology partners for help and then suing them for patent infringement after learning more about the intricate details of their

products," and (iii) an allegation that "Sonos has been found to have deceived the patent office in the prosecution of its patents" in the past.  D.I. 39, p. 31-32.

As to the first allegation, Linkplay fails to provide any notice of (i) what alleged conduct in Sonos's "dealings with Linkplay" involved fraud, deceit, unconscionability, or bad faith, (ii) how any alleged conduct from Sonos's "dealings with Linkplay" injures Linkplay, and (iii) how any alleged conduct from Sonos's "dealings with Linkplay" had an immediate and necessary relationship to the equity which Sonos seeks to obtain in this Court.  Similarly, as to the second and third allegations, Linkplay fails to provide any notice of how Sonos's alleged "history" with other "potential technology partners" and Sonos's alleged conduct involving different, unrelated patents that were asserted against another party in another district court injures Linkplay and had an immediate and necessary relationship to the equity which Sonos seeks to obtain in this Court.

Thus, to the extent Linkplay's unenforceability counterclaims rely on its unclean hands defense, such counterclaims are not pled with "particularity" under Rule 9(b) and should be dismissed, and the corresponding unclean hands defense should be stricken for the same reason. *See, e.g.*, *EMC Corp.*, 2014 WL 5795557, at *2; *Barry v. Stryker Corp.*, 20-CV-1787, 2023 WL 2733652, at *10 (D. Del. Mar. 20, 2023); *Bench Walk Lighting*, 2020 WL 5128086, at *2.

### VI.    CONCLUSION

For the foregoing reasons, Sonos respectfully submits that the Court should strike Linkplay's (i) pleading of 35 U.S.C. § 288 in its *Sixth* defense, (ii) *Seventh*, *Eighth, Tenth, Eleventh, Twelfth* [*sic*], and *Thirteenth* defenses, (iii) pleading of no indirect infringement in *Count Five* (*see* D.I. 39, ¶¶84, 86), (iv) pleading of invalidity in *Count Six* except for its pleading of improper inventorship (*See id.*, ¶¶91, 96).  The Court should also dismiss *Counts One-Four* and *Counts Seven-Fifteen*.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  */s/ Philip A. Rovner*

George I. Lee                              Philip A. Rovner (#3215)
Sean M. Sullivan                       Hercules Plaza
Rory P. Shea                             P.O. Box 951
J. Dan Smith                             Wilmington, DE 19899
Michael P. Boyea                      (302) 984-6000
Cole B. Richter                          provner@potteranderson.com
Jae Y. Pak
LEE SULLIVAN SHEA & SMITH LLP          *Attorneys for Plaintiff Sonos, Inc.*
656 W Randolph St, 5W
Chicago, IL 60661
(312) 754-0002

Dated: May 31, 2024
11539707