IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SONOS, INC., <br><br> Plaintiff, <br><br> v. <br><br> LINKPLAY TECHNOLOGY INC. and LINKPLAY TECHNOLOGY, INC., NANJING, <br><br> Defendants. | ) <br> ) <br> ) <br> ) C.A. No. 24-131-JNR <br> ) <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) <br> ) <br> ) <br> ) |

**[PROPOSED] ESI STIPULATION**

Upon the stipulation of the parties, the Court ORDERS as follows:

1. This Order streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

2. This Order may be modified in the Court's discretion or by stipulation.

3. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

4. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5. The parties agree to comply with Sections 1(a), 1(b), 1(c)(i), 1(d)(i)-(iv), and 2 of this District's DEFAULT STANDARD FOR DISCOVERY, INCLUDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI") ("Default ESI Order") and this case's Scheduling Order (Dkt. 44), except that this ESI Stipulation supersedes and replaces Sections 1(c)(ii), 3, 4, and 5 of the Default ESI Order. With regard to Section 1(c)(ii) of the Default ESI

Order, the parties agree that paragraph 14 of this Order governs the sources that need not be searched.

6. General ESI production requests under Federal Rules of Civil Procedure 34 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests. For the avoidance of doubt, "other forms of electronic correspondence" refer to documents attached to or linked to the email, such as email attachment.

7. Email production requests shall be propounded for specific issues only, rather than general discovery of a product or business.

8. Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

9. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe in accordance with the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1), which should be applied to email production requests.

10. Email production requests may be served on each party and the email production requests served against a party shall be limited to **seven** custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need

based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

11. Each requesting party shall limit its email production requests to a total of **five** search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery. The parties shall provide hit counts in response to email production requests in order to facilitate the efficient production of email documents.

12. As soon as practicable, the producing party shall produce the emails that satisfy the identified search terms and fall within the respective date range for each custodian, along with any attachments to such emails as described in paragraph 15. The producing Party need

only produce hits resulting from the identified search terms and identified custodians and shall not withhold or otherwise fail to produce hits resulting from the search for any reason other than on the basis of privilege or third-party confidentiality. The parties agree that the stipulated protective order is sufficient in most cases to preserve confidentiality of emails and other ESI that are subject to third-party confidentiality provisions. To the extent that third-party confidentiality obligations prevent a producing party from producing email in accordance with this Order despite the protections for non-parties set out in the stipulated protective order, the parties agree to meet and confer in good faith and cooperate toward the production of such emails under sufficient conditions to protect third-party confidentiality. Toward this end, the producing party will, at a minimum, provide sufficient information to enable the parties to seek appropriate protections and/or an order from the Court providing for the production of such emails, including but not limited to (i) identification of the custodians of the third-party confidential emails, (ii) an identification of the third party, and (iii) production of the instrument governing such third-party confidentiality. If possible, the producing party shall redact all third-party confidential information from such emails and produce them in redacted form while cooperating toward the production of unredacted versions in accordance with the above.

13. Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery.

14. Absent a showing of good cause, the following sources need not be searched for documents and information responsive to the parties' discovery requests: automated disaster recovery backup systems and/or disaster recovery backup tapes; RAM or temporary files; temporary internet files, history, cache, and cookies; data in metadata fields that are updated automatically such as last-opened dates; data remaining from systems no longer in use that is

unintelligible on the systems in use; residual, fragmented, damaged, permanently deleted, and unallocated data; legacy computer systems; audio files; video files; server systems; network logs; personal digital assistants; mobile devices; cell phones; voicemails; USB flash drives, or the like; portable disks; voicemail systems; and instant messaging conversations (e.g., Skype, Slack, gChat, WeChat, DingTalk, etc.). For the avoidance of doubt, the parties agree to search and produce from third-party cloud services that are used to store documents and things that are within the possession, custody, or control of the party.

15. Form of Production and Electronically Stored Information

The metadata fields listed below at paragraph 15(n) shall generally be included in the production of Electronically Stored Information ("ESI") if such fields exist and are reasonably available to the producing party. The following parameters shall apply to ESI production:

a) The general document image format of each electronic document produced shall be single- page TIFF Group IV images, black and white, at 300 x 300 dpi resolution with a standard delimited concordance format (DAT file) and either IPRO (LFP file) or Opticon (OPT file) format, including document breaks and page counts. The producing Party may, at any time, reproduce any document in color in JPG format or at a higher resolution. Documents reproduced in color or at a higher resolution shall bear the same production number(s) as the document originally produced document where practicable. A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF image filename.

b) Images shall be produced using a unique file name that will be the production number of that page (e.g., ABC000001.TIF). The production number shall appear on the face of the image.

c) Spreadsheets (e.g., MS Excel, Google Sheets) and delimited text files (e.g., comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in either

their native file format or MS Excel. TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not be unreasonably denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields. A TIFF placeholder indicating that the document was provided in native format should accompany the database records. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

d) In addition, when possible native files shall be produced using a name that bears the production number, for example: ABC000002.xls. The DAT file shall also include a path to the native file.

e) Parent-child relationships (association between an attachment and its parent document) shall be preserved to the extent such relationships are maintained in the normal course of business in the source repository. The attachment(s) shall be produced adjacent to the parent document in terms of production numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment. Any parent-child relationship will be reflected in the DAT file.

f) Productions that contain foreign language documents shall be Unicode compliant.

g) To the extent possible, the unitization of a produced electronically stored document and any attachments or affixed notes shall be maintained as it existed in the original file or computer. Scanned/paper documents should be logically unitized (i.e., to preserve page breaks between documents and otherwise allow separate documents to be identified).

h) If unitization cannot be maintained, the original unitization shall be documented in the associated load file or otherwise electronically tracked if possible.

i) A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially-acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TextLink field.

j) The parties will use their best efforts to filter out common system files and application executable files and scan document productions for viruses. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Source code files will be provided according to the Protective Order and not included in custodial data productions.

k) The parties are required to produce only a single copy of a responsive document and the parties may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians, provided all custodians from whose files the document was collected are identified in the ALL CUSTODIAN field (see below).

l) The parties are not required to preserve metadata fields that are frequently updated in the ordinary course of business, such as last-opened dates.

m) The parties shall not be required to create any metadata for production (e.g., hash value or other metadata not associated with ESI in the ordinary course of business) except that the parties will create a field to indicate whether or not a document has been marked confidential pursuant to the protective order (see below list of metadata fields). Any document produced with a confidentiality designation on the produced image is to be afforded confidential treatment under the Protective Order regardless of whether there is an entry in this field.

n) The following metadata fields shall be included in the production of all ESI if such fields exist and are reasonably available to the producing party:

7

| Field Name | Field Description |
|---|---|
| BEGBATES | Number stamped on first image page of document |
| ENDBATES | Number stamped on last image page of document |
| BEGATTACH | Number stamped on first image page of attachment(s) |
| ENDATTACH | Number stamped on last image page of attachment(s) |
| CONF | Indicates whether a document has been designated as Confidential or Highly Confidential pursuant to the operative protective order. |
| ALL CUSTODIAN | Where applicable and available, identifies the individual (custodian) from whom the document originated (naming convention: last name, first name) and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| FROM | Email author |
| TO | Email addressee(s) |
| CC | Email copyee(s) |
| BCC | Email blind copyee(s) |
| SUBJECT | Email subject line |
| DATE_SENT | Email date sent |
| TIME_SENT | Email time sent |
| DATE_RECEIVED | Email date received |
| TIME_RECEIVED | Email time received |
| EMAILFOLDER | Email folder path |
| AUTHOR | Document author |
| TITLE | Document title |
| DATECREATED | Document create date |

| Field Name | Field Description |
|---|---|
| TIMECREATED | Document create time |
| DATELASTMOD | Document last modified date |
| TIMELASTMOD | Document last modified time |
| FILENAME | File name of an electronic document or attachment |
| FILEPATH | File path of an electronic document or attachment |
| FILESIZE | File size of an electronic document or attachment |
| FILE_EXTENSION | File extension of an electronic document or attachment |
| MD5HASH | Fingerprint signature of an electronic document or attachment |
| NATIVEFILELINK | For documents produced as native file, link to that file |
| TEXTFILELINK | Link to text file produced with document or attachment |

All documents shall be produced in their original language. Where a document responsive to a discovery request exists in a foreign language and an English-language version of that document exists in the producing party's possession, custody or control, the producing party shall produce both the original document and all pre-existing English-language versions.

Bates numbering and confidentiality designations shall not obscure any text or image in a document.

The parties also shall, upon reasonable request, produce a higher-resolution or color image of a document. The producing party shall have the option of producing the native-file version of the documents in response to such requests.

If a party prints (whether in hard copy or to a .pdf or other electronic image) documents, or portions thereof, that are produced in native format, the party shall mark any such printout with a footer containing (1) the document's Bates number, and (2) any confidentiality designation assigned by the producing party to the document.

The parties may use encryption software, such as Accellion, kiteworks, WinZip, or PointSec, to protect any documents or materials produced on physical media.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: August 27, 2024

| POTTER ANDERSON & CORROON LLP | SHAW KELLER LLP |
|---|---|
| By: */s/ Philip A. Rovner*<br>   Philip A. Rovner (#3215)<br>   Hercules Plaza<br>   P.O. Box 951<br>   Wilmington, DE 19899<br>   (302) 984-6000<br>   provner@potteranderson.com<br><br>*Attorneys for Plaintiff Sonos, Inc.* | By: */s/ Andrew E. Russell*<br>   John W. Shaw (#3362)<br>   Karen Elizabeth Keller (#4489)<br>   Andrew E. Russell (#5382)<br>   Emily DiBenedetto (#6779)<br>   I.M. Pei Building<br>   1105 North Market Street, 12th Floor<br>   Wilmington, DE 19801<br>   jshaw@shawkeller.com<br>   kkeller@shawkeller.com<br>   arussell@shawkeller.com<br>   edibenedetto@shawkeller.com<br><br>*Attorneys for Defendants Linkplay Technology Inc. and Linkplay Technology, Inc., Nanjing* |

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: _____

_____
UNITED STATES DISTRICT JUDGE

11712481