## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| SONOS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 1:24-CV-131 |
| | ) | |
| v. | ) | |
| | ) | |
| LINKPLAY TECHNOLOGY INC.; | ) | |
| and LINKPLAY TECHNOLOGY, | ) | |
| INC., NANJING | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

**J. Nicholas Ranjan, United States District Judge (sitting by designation)**

Plaintiff Sonos, Inc. brings this patent-infringement case against Linkplay Technology Inc. ("Linkplay US") and Linkplay Technology, Inc., Nanjing ("Linkplay CN") (together, "Linkplay Defendants") alleging that the Linkplay Defendants have infringed certain of Sonos's patents. Linkplay CN has moved to dismiss the case against it for lack of personal jurisdiction, and in the alternative, both Linkplay Defendants seek to transfer this case to the Northern District of California. ECF 37. For the reasons below, the Court will deny the motion.

## BACKGROUND

On April 17, 2024, Sonos filed the operative complaint against the Linkplay Defendants, asserting five patent-infringement claims. ECF 22. Sonos asserts ownership of the following patents-in-suit: U.S. Patent Nos. 7,571,014 (the '014 Patent), 9,164,532 (the '532 Patent), 9,213,357 (the '357 patent), 10,541,883 (the '883 patent), and 10,853,023 (the '023 patent). *Id.* at ¶¶ 67, 82, 96, 107, 122. These patents all relate to multi-room audio systems. *Id.* at ¶¶ 80, 94, 106, 120, 135. Similar to Sonos, the Linkplay Defendants have developed their own multi-room audio system, called WiiM, which competes with Sonos in the multi-room audio market. *Id.* at ¶¶

12-13.  Sonos alleges that the Linkplay Defendants' WiiM system infringes one or more of the claims of the patents-in-suit.  *See id.*

On May 17, 2024, the Linkplay Defendants filed a motion to dismiss for lack of personal jurisdiction or in the alternative to transfer this action to the Northern District of California.  ECF 37.  The parties then engaged in several rounds of briefing, and the Court held oral argument on the motion.  ECF 38; ECF 48; ECF 63; ECF 65; ECF 67; ECF 68; ECF 72; ECF 83.

Relevant to the motion now before the Court, the following facts have been sufficiently proffered by Sonos or are otherwise not in dispute.  Sonos is a Delaware corporation with a principal place of business in California that designs and sells home audio systems.  ECF 22, ¶¶ 1-3, 42.  Linkplay US is a Delaware corporation with a principal place of business in California.  *Id.* at ¶ 43.  Linkplay CN is a Chinese corporation with a principal place of business in Nanjing, China.  *Id.* at ¶ 44.  Linkplay CN's offices are in China, and it has no physical presence in the United States.  ECF 38, Ex. A (Declaration of Lifeng Zhao), ¶ 3.

The Linkplay Defendants submitted a sworn declaration from Lifeng Zhao, who is the CEO of both Linkplay Defendants, that contains a number of material facts related to personal jurisdiction.  *See id.*  Linkplay CN owns Linkplay US.  *Id.* at ¶ 6.  Linkplay CN sells WiiM products directly to Linkplay US, which then distributes the products throughout the United States through Amazon.  *Id.* at ¶¶ 8-10.  Some of those accused products in the stream are eventually sold to end-users in Delaware (albeit a very small percentage of the Linkplay products).  *Id.* at ¶ 24.  The Linkplay Defendants' products were designed and manufactured outside of the United States and developed and marketed from the Northern District of California.  *Id.* at ¶ 23.

Sonos also provides additional facts related to Linkplay CN's contacts with the United States and Delaware specifically.  Linkplay CN sells accused products to other third parties that are located in the United States, or to third parties who take

delivery of the products outside the United States and then sell products incorporating the accused products in the United States. ECF 22, ¶¶ 51-52. This is evidenced by certain Linkplay CN invoices. ECF 78, Exs. A, and B (invoices between Linkplay CN and a U.S.-based third party). And as evidenced by its CEO's declaration, Linkplay CN knows that its products reach Delaware. ECF 38, Ex. A, ¶ 24. Finally, Linkplay CN admits it has "an intent to serve the U.S. market." ECF 38, p. 6.

## LEGAL STANDARD

On a motion brought pursuant to Rule 12(b)(2), the plaintiff bears the burden of showing that the defendant is subject to personal jurisdiction. *Graphics Properties Holdings, Inc. v. ASUS Computer Int'l*, 70 F. Supp. 3d 654, 659 (D. Del. 2014). "To meet this burden, the plaintiff must produce sworn affidavits or other competent evidence, since a Rule 12(b)(2) motion requires resolution of factual issues outside the pleadings." *Janssen Pharmaceutica, N.V. v. Mylan Pharms. Inc.*, No. 15-760, 2016 WL 11785098, at *3 (D. Del. Oct. 18, 2016) (cleaned up). In the absence of an evidentiary hearing, "a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction." *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017); *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015) (when "determination of personal jurisdiction is based on affidavits and other written materials" without jurisdictional discovery and without a jurisdictional hearing, plaintiff "bears only a prima facie burden.").

"A plaintiff presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Robert Bosch LLC v. Alberee Prod., Inc.*, 70 F. Supp. 3d 665, 672 (D. Del. 2014) (cleaned up). The Court accepts the plaintiff's jurisdictional allegations as true and resolves factual disputes in the plaintiff's favor. *Id.*

## DISCUSSION & ANALYSIS

**I.    Linkplay CN's motion to dismiss for lack of personal jurisdiction.**

In deciding a motion to dismiss for lack of personal jurisdiction, the Court must perform a two-part analysis.  *Id.*  First, the Court must analyze the long-arm statute of the state where the court is located—here, Delaware.  *Id.*  Second, the Court must determine whether the state's long-arm statute comports with Due Process.  *Id.*  "Due Process is satisfied if the Court finds the existence of 'minimum contacts' between the non-resident defendant and the forum state, 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

**A.    Long-arm statute.**

Under the relevant portion of Delaware's long-arm statute, a court may exercise jurisdiction over a non-resident who:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

10 Del. C. § 3104(c)(1)-(4).

Sonos argues Linkplay CN is subject to personal jurisdiction under Sections (c)(1) and (c)(4) of the long-arm statute, based on a theory of dual jurisdiction.  ECF 48, p. 3.

Delaware courts use a dual-jurisdiction analysis to apply the Delaware long-arm statute to situations where a non-resident has sufficient contacts with Delaware

- 4 -

through placing its products in the "stream of commerce." *Belden Techs., Inc. v. LS Corp.*, 829 F. Supp. 2d 260, 267 (D. Del. 2010). "The dual jurisdiction theory is based on at least partial satisfaction of § 3104(c)(1) and (c)(4)." *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1352 (Fed. Cir. 2016). "[T]he dual jurisdiction analysis requires a showing of both: (1) an intent to serve the Delaware market; and (2) that this intent results in the introduction of the product into the market and that plaintiff's cause of action arises from injuries caused by that product." *Belden Techs., Inc.*, 829 F. Supp. 2d at 267-68. Under the dual-jurisdiction test, "a non-resident firm's intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware." *Power Integrations, Inc*, 547 F. Supp. 2d at 373.

Here, Sonos has satisfied both prongs of the test. As to the first prong—intent to serve the Delaware market—that is a relatively low threshold to meet. Sonos need only show "intent to serve the United States market" and an "[absence of] evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware." *Power Integrations, Inc*, 547 F. Supp. 2d at 373. Sonos has shown that Linkplay CN intended to serve the Delaware market by selling accused products to its subsidiary, Linkplay US, who then distributed the products throughout the United States, including in Delaware. ECF 22, ¶¶ 51-52; ECF 38, Ex. A at ¶¶ 8-9, 24. Linkplay CN has, in fact, conceded that it has "an intent to serve the U.S. market." ECF 38, p. 6. Linkplay CN has also failed to introduce evidence that it intended to exclude Delaware from its United States marketing and distribution efforts. *Tigo Energy Inc. v. SMA Solar Tech. Am. LLS*, No. 22-915, 2023 WL 6990896, at *8 (D. Del. Oct. 23, 2023) (finding personal jurisdiction under stream-of-commerce theory proper because defendant "presented no evidence that Delaware was somehow excluded from" U.S. marketing efforts). Indeed, there's no question

that certain accused products have been sold by a Delaware-based reseller and certain of the accused products have, through the stream of commerce, been sold to Delaware end purchasers.  ECF 49, Ex. J (webpage showing Linkplay modules for sale and showing Delaware address of reseller); ECF 38, Ex. A, ¶ 24.  The first prong of the dual-jurisdiction test is therefore met.

As to the second prong of the dual-jurisdiction test, Sonos has alleged that Linkplay CN's intent to serve the United States market results in the introduction of products into Delaware and that Sonos's injuries arise from those products.  ECF 22, ¶¶ 51, 54.  Linkplay CN represents that "it does not keep track of" inventory sent to the United States.  ECF 38, Ex. A, ¶ 12.  However, this is belied by Linkplay CN's CEO's sworn statement that Delaware accounts for at least some sales of the infringing products.  *Id.* at ¶ 24.  This Court has found that the dual-jurisdiction test was satisfied in a similar scenario.  *Robert Bosch*, 70 F. Supp. 3d at 679 (stating that "[c]onsidered as a whole, the record reflects that [the defendant's] intended targeting of the Delaware market resulted in the introduction of the accused product into Delaware" where defendant knew a distributor sold its products in Delaware).

Thus, Sonos has met its burden on the statutory aspect of the jurisdiction test.[1]

**B.    Due process.**

Having determined that Linkplay CN is subject to this Court's jurisdiction under Delaware's long-arm statute, the Court must next determine if subjecting Linkplay CN to jurisdiction in Delaware violates due process under the Fourteenth Amendment.  *Robert Bosch LLC*, 70 F. Supp. 3d at 672.  "[S]atisfying due process

---

[1] Sonos also argues that the Court can exercise personal jurisdiction over Linkplay CN based on an agency theory.  ECF 22, ¶¶ 49-50; ECF 48, p. 6 fn. 3.  "Under agency theory, a defendant company may be subject to personal jurisdiction under Delaware's long-arm statute by virtue of the court's personal jurisdiction over the defendant company's affiliate."  *Robert Bosch LLC*, 70 F. Supp. 3d at 678-79.  To address this theory, there would need to be more fulsome discovery and probably an evidentiary hearing, and so the Court declines to address this argument.

requires the existence of certain minimum contacts between the defendant and the forum State, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Power Integrations, Inc.*, 547 F. Supp. 2d at 374 (cleaned up). A "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (cleaned up).[2]

Due process requires a defendant to "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (cleaned up). The Federal Circuit has set forth three considerations for whether the due-process requirement is met: "(1) whether the defendant purposefully directs activities at the forum's residents; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1361 (Fed. Cir. 2012). The first two factors relate to the minimum-contacts prong, and the third factor relates to the fair-play-and-substantial-justice prong. *Celgard*, 792 F.3d at 1378. The plaintiff "bears the burden of affirmatively establishing the first two elements of the due process

---

[2] Linkplay CN argues that the Supreme Court's decision in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011) renders this analysis obsolete. ECF 38, pp. 3, 5. Not so. The Federal Circuit has explained that because the Supreme Court didn't reach a majority opinion in *J. McIntyre*, lower courts "must follow its narrowest holding, which is what can be distilled from Justice Breyer's concurrence—that the law remains the same after *McIntyre*." *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1349 (Fed. Cir. 2016) (cleaned up). Because *J. McIntyre* did not change the jurisdictional framework for stream-of-commerce cases, the Federal Circuit continues to apply its pre-*J. McIntyre* precedent, which is *Beverly Hills Fan Co. AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363-64 (Fed. Cir. 2012).

requirement" after which the burden shifts to the defendant to show that personal jurisdiction is unreasonable. *Id.*

Under a stream-of-commerce theory, which is asserted by Sonos here, the minimum-contacts requirement is satisfied if a defendant who releases products in the stream of commerce engages in "[a]dditional conduct" indicating "an intent or purpose to serve the market in the forum State, for example," marketing and advertising "in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 112 (1987) (plurality opinion).[3]

A plaintiff can show that a defendant has minimum contacts with a forum if the plaintiff shows that the defendant "purposefully shipped" accused products into the forum state "through an established distribution channel" and "[t]he cause of action for patent infringement is alleged to arise out of th[o]se activities." *Beverly Hills Fan Co.*, 21 F.3d at 1565.

Here, as described in more detail above, Sonos contends that Linkplay CN purposefully shipped infringing products in the United States and Delaware through its Delaware subsidiary, Linkplay US, and also alleges that Linkplay CN's purported infringement arises out of those shipments. ECF 22, ¶ 48. Because Sonos has produced evidence showing that Linkplay CN purposefully shipped products to Delaware (through Linkplay US) and those shipments give rise to alleged infringement, Sonos has sufficiently shown that Linkplay CN has minimum contacts with Delaware. *Tigo Energy Inc.*, 2023 WL 6990896 at *9 (finding plaintiff had pled sufficient minimum contacts where it alleged that defendant "purposefully shipped

---

[3] This is the test as articulated by Justice O'Connor, writing for four Justices. Because this test is more restrictive than the test articulated by Justice Brennan (also writing for four Justices), if jurisdiction is proper under this test, then it is also proper under Justice Brennan's test. *Robert Bosch LLC*, 70 F. Supp. 3d at 677.

infringing products into the U.S. and Delaware through an established distribution channel using its subsidiary.").

In addition to minimum contacts, the Court must still find that exercising jurisdiction comports with notions of fair play and substantial justice. *Beverly Hills Fan Co.*, 21 F.3d at 1568. Cases where traditional notions of fair play and substantial justice require jurisdiction to be denied "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Id.*

This is not such a "rare situation." While the Court acknowledges that Linkplay CN will face some difficulties in litigating in this forum, these difficulties are mitigated by "progress in communications and transportation" and because Linkplay CN shares counsel with Linkplay US. *Tigo Energy Inc.*, 2023 WL 6990896 at \*10 (cleaned up). And "Delaware has an interest in discouraging injuries that occur within the state, which extends to patent infringement actions such as the one here." *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, No. 05-422, 2008 WL 78748, at \*5 (D. Del. Jan. 4, 2008).

Linkplay CN argues that it should not be subject to personal jurisdiction in Delaware because it has "no physical presence in the United States" and is a Chinese corporation, not a Delaware corporation. ECF 38, p. 3. However, when a foreign defendant's products reach Delaware through shipment "through established distribution channels," exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice even if the defendant does not have a physical presence in Delaware. *Robert Bosch LLC*, 70 F. Supp. 3d at 679 (exercising jurisdiction comported with due process because of purposeful shipment of accused products to Delaware through established distribution channels even though defendant had "no business, manufacturing, or assembly facilities, distributors, sales,

addresses, or telephone numbers in Delaware; [had] never attended a trade show in Delaware or paid taxes in Delaware; and its employees [had] never traveled to Delaware for business."). This is so because the sales of the accused products "in Delaware were not isolated incidents but instead arose from" Linkplay CN's efforts to serve the state. *Id.*

In light of these considerations, the potential burden of subjecting Linkplay CN to litigation in Delaware does not outweigh Delaware's interest in discouraging patent infringement within the state, despite Linkplay CN's lack of a physical presence in Delaware.[4]

## II.    The Linkplay Defendants' motion to transfer.

In the alternative, the Linkplay Defendants ask this Court to transfer venue to the Northern District of California. Questions of venue, when both forums are proper, are governed by 28 U.S.C. § 1404(a), which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). The movant bears the burden of establishing the need for transfer. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). That showing must proceed in two steps. First, the movant must demonstrate that the proposed transferee forum is "one in which the action might have originally been brought." *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, No. 12-139, 2013 WL 3293611, at *1 (D.

---

[4] The parties also initially argued over whether Federal Rule of Civil Procedure 4(k) provided a basis for jurisdiction here. But because Linkplay CN conceded in its briefs and at oral argument that personal jurisdiction exists in the Northern District of California, this rule does not apply. ECF 110, 4:14-19; ECF 38, p. 9.

Del. June 28, 2013). Second, the movant must show that the interests of convenience and justice favor transfer. *Id.* at *2.

Turning to the first step, the parties do not dispute that the case could have been brought in the Northern District of California.

The second step is the one in dispute. With respect to the second step—the convenience assessment—the Third Circuit[5] has articulated several private and public factors for the Court to balance.

The Court starts with the private factors: (1) plaintiff's choice of forum; (2) defendant's preference; (3) the location where the claim arose; (4) the convenience of the parties relative to their physical and financial condition; (5) the convenience to witnesses as pertaining to their availability for trial; and (6) the location of books and records. *Jumara*, 55 F.3d at 879-80.

**Plaintiff's choice of forum.** This factor weighs against transfer. The Linkplay Defendants argue Sonos's choice of forum should be afforded less deference because while Sonos is incorporated in Delaware, it does not otherwise have operations there. ECF 38, p. 9-10 (citing *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011)); ECF 57, pp. 4-5. Sonos argues that its forum preference should be afforded great weight, especially in light of the fact that it is incorporated in Delaware. ECF 48, p. 12-13.

---

[5] For the transfer motion, the Court applies Third Circuit precedent, rather than Federal Circuit precedent. *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318 (Fed. Cir. 2021) ("In reviewing transfer decisions, we look to the applicable regional circuit law[.]"); *Deloitte Consulting LLP v. Sagitec Sols. LLC*, 692 F. Supp. 3d 421, 428 (D. Del. 2023) ("In patent cases, the Federal Circuit has instructed district courts to apply the law of the regional circuit, here the Third Circuit, in evaluating motions to transfer.").

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed."  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (cleaned up).  Here, both parties have "willingly submitted to suit" in Delaware by making it their corporate home.  *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011).

The Linkplay Defendants cite the Federal Circuit's decision in *Link_A_Media* to argue that Sonos's choice of forum should be given less weight.  In *Link_A_Media*, the Federal Circuit, applying Third Circuit precedent, vacated an order denying the defendant's motion to transfer from Delaware to California.  *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1225 (Fed. Cir. 2011).  The Court recognized that "the Third Circuit places significance on a plaintiff's choice of forum" but nevertheless found that the district court "placed far too much weight on the plaintiff's choice of forum."  *Id.* at 1223.

A key factor in the Federal Circuit's decision was that the plaintiff *was not incorporated in Delaware*, and thus was not bringing the lawsuit on its home turf.  *Id.*  Instead, the *defendant* was incorporated in Delaware.  *Id.*  ("When a plaintiff brings its charges in a venue that is not its home forum, however, that choice of forum is entitled to less deference.").  This is a key factual difference from the case here, where both Sonos and Linkplay US are incorporated in Delaware.  As this Court observed, the Federal Circuit's *Link_A_Media* decision did not fundamentally alter the transfer analysis, which requires courts to balance the transfer factors on a case-by-case basis.  *See Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 753 (D. Del. 2012).

The judges in this District have routinely given weight to this factor when a plaintiff is incorporated in Delaware, and the Court does so here.  *See, e.g., Pacira Biosciences, Inc. v. Ventis Pharma, Inc.*, No. 23-1250, 2024 WL 3925117, at *2 (D. Del.

Aug. 23, 2024) ("Plaintiff's choice to sue in Delaware weighs strongly in Plaintiff's favor, though not as strongly as it would if Plaintiff had its principal place of business in Delaware"); *FG SRC LLC v. Xilinx, Inc.*, No. 20-601, 2021 WL 495614, at *4 (D. Del. Feb. 10, 2021) (giving plaintiff's choice of forum "paramount consideration" because it was incorporated in Delaware even though it had little other contact with the state); *Abraxis Bioscience, LLC v. HBT Labs, Inc.*, No. 18-19, 2019 WL 2270440, at *2 (D. Del. May 28, 2019) ("Additionally, I will not discount Plaintiff's choice of forum based on a lack of physical ties to Delaware."). Further, even if a party's state of incorporation "cannot be a dispositive fact" in the transfer analysis, that doesn't mean that it is accorded no weight at all. *Express Mobile, Inc. v. Web.com Grp., Inc.*, No. 19-1936, 2020 WL 3971776, at *5 (D. Del. July 14, 2020); *see In re Altera Corp.*, 494 F. App'x 52, 53 (Fed. Cir. 2012) (parties' "status as Delaware corporations is not entitled to controlling weight insofar as no office or employees are located in Delaware. Still, the relevant inquiry is broad enough to include the Delaware court's interest in resolving disputes involving its corporate citizens, as opposed to selection of venue for less legitimate reasons.").

Taking all of this under consideration, the Court finds that this factor weighs against transfer. However, this one factor is not dispositive and the Court will engage in the appropriate balancing of all factors.

**Defendants' preferences.** This factor weighs in favor of transfer. Indeed, both parties agree that this factor favors transfer, albeit to a differing degree. ECF 38, p. 10 (stating that this factor favors transfer because Linkplay US has its principal place of business in the Northern District of California); ECF 48, p. 13 (explaining that this factor only slightly favors transfer).

**Location where the claim arose.** This factor is neutral. The Linkplay Defendants argue this factor favors transfer because the alleged infringing products were developed in and marketed from California. ECF 38, p. 11. Sonos argues that

this factor does not favor transfer because the products were designed and manufactured in China and only marketed in California. ECF 48, p. 14. As explained above, a patent-infringement claim arises wherever a party commits acts of infringement, which includes selling alleged infringing products and offering them for sale. *Cellectis S.A.*, 858 F. Supp. 2d at 381. And here, Sonos alleges that Linkplay US offers at least some accused products for sale in Delaware. ECF 22, ¶ 48. While both parties acknowledge that at least some alleged infringement occurred in the Northern District of California (ECF 38, p. 11; ECF 48, pp. 13-14), because acts of infringement occurred in both fora, this factor is neutral.

**Convenience to the parties relative to their physical and financial condition.** This factor is neutral. The Linkplay Defendants argue that the Northern District of California is more convenient to the parties because both parties are headquartered in California and their resources would be strained because they are smaller companies than Sonos. ECF 38, pp. 11-12. Sonos contends this factor is neutral because proceedings can be virtual and litigating here does not present a unique or unusual burden for Linkplay Defendants. ECF 48, pp. 14-15.

In weighing this factor, courts look to: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 731 (D. Del. 2012) (cleaned up).

As to the parties' physical location, neither party has a physical presence in Delaware. As to the other two considerations, the Court is not persuaded by the Linkplay Defendants' argument that their resources would be strained by litigating here. Having "accepted the benefits of incorporation under the laws of the State of Delaware, a company should not be successful in arguing that litigation in Delaware

- 14 -

is inconvenient, absent some showing of a unique or unexpected burden." *Hologic, Inc. v. Minerva Surgical, Inc.*, 163 F. Supp. 3d 118, 121 (D. Del. 2016) (cleaned up). Neither Linkplay entity has shown that it would be subject to such a "unique or unexpected burden." As to Linkplay US, although it is a smaller company than Sonos (ECF 38, Ex. C; *Id.*, Ex. A at ¶¶ 25-26), in light of Linkplay US's incorporation in Delaware, hardship related to financial resources doesn't equate to a "unique or unexpected burden." *Hologic*, 163 F. Supp. 3d at 121 (holding that this factor did not warrant transfer due to financial hardship on the part of a start-up company because the company was incorporated in Delaware); *Inst. for Env't Health Inc. v. Nat'l Beef Packing Co., LLC*, No. 23-0826, 2024 WL 2208948, at *5 (D. Del. May 16, 2024) (fact that defendant had no physical presence in Delaware other than incorporation was "insufficient" to show unique burden).

As to Linkplay CN, it will experience basically the same level of inconvenience whether this litigation proceeds in California or Delaware. Linkplay CN's primary office (and its employees) are located in Shanghai. ECF 38, Ex. A at ¶ 31. Linkplay Defendants point out that there is a direct flight from Shanghai to California but no direct flight from Shanghai to Delaware. ECF 38, p. 12. Given the availability of virtual hearings and virtual depositions, this is not much of a burden. And if this case goes to trial, the Court is not persuaded that an extra layover in the event Linkplay CN's employees are required to attend a trial in this matter constitutes such a unique or unexpected burden to tip the scales. *Dynamic Data Techs., LLC v. Amlogic Holdings, Ltd.*, No. 19-1239, 2020 WL 1915261, at *2 (D. Del. Apr. 20, 2020) (finding this factor neutral even though defendant had employees in China and it would be difficult for them to travel to Delaware).

**Convenience of witnesses.** This factor is neutral. This factor is only relevant "to the extent that the witnesses may actually be unavailable for trial in one of the fora[.]" *Jumara*, 55 F.3d at 879. This Court "has recognized that this factor is

only given weight when there is some reason to believe that a witness actually will refuse to testify absent a subpoena." *Smart Audio Techs., LLC*, 910 F. Supp. 2d at 732. The Linkplay Defendants "bear[] the burden to show that the non-party witnesses would refuse to testify absent a subpoena and would thus be unavailable for trial in Delaware." *FG SRC LLC*, 2021 WL 495614 at *5. The Linkplay Defendants must show both the unavailability of the witness and the importance of the witness to their case. *Smart Audio Techs., LLC*, 910 F. Supp. 2d at 732. The Linkplay Defendants have failed to meet this burden.

The Linkplay Defendants identify three categories of witnesses they assert will be either unavailable for trial or refuse to testify absent a subpoena: (1) Linkplay US's former employees (who reside in California or on the West Coast); (2) Sonos's former employees; and (3) the Linkplay Defendants' "technology partners," which include Apple (headquartered in the Northern District of California), Google (headquartered in the Northern District of California), and Amazon (headquartered in the Western District of Washington). ECF 38, pp. 13-15. Sonos represents that its former employees and other third parties identified by the Linkplay Defendants are located outside of the Northern District of California and some are located closer to this District. ECF 48, pp. 16-17.

As to the parties' former employees, "[a]bsent contrary evidence, it is reasonable to assume that important non-party witnesses are likely to voluntarily appear for trial (in the rare cases that actually go to trial)." *FG SRC LLC*, 2021 WL 495614 at *5; *but see Ithaca Ventures k.s. v. Nintendo of Am. Inc.*, No. 13-824, 2014 WL 4829027, at *5 (D. Del. Sept. 25, 2014) (there was "some reason to believe" a witness would refuse to testify because she was no longer employed by defendant). Beyond a cursory statement that Linkplay US's former employees will refuse to testify based on the burden of traveling to Delaware, the Linkplay Defendants have

- 16 -

not shown unavailability. Nor have the Linkplay Defendants identified why these witnesses are important to their case. ECF 38, pp. 13-15.

As to potential third parties such as Google, Apple, Amazon, and others, the Linkplay Defendants have also failed to make the required showing. The Linkplay Defendants discount the locations of third parties who distribute Linkplay modules by stating that the Linkplay Defendants cannot control the flow of distribution. ECF 57, p. 8. As to Google, Apple, and Amazon, the Court finds no support for the Linkplay Defendants' argument that Sonos will have to seek evidence from these companies because the Linkplay Defendants' modules connect to their playback devices. The Linkplay Defendants assert that Sonos will have to seek this evidence because Sonos accuses the Linkplay Defendants of infringing on its patents related to multiroom audio, and the only multiroom audio functionality of the Linkplay modules are found in software for Chromecast, AirPlay, and Alexa. ECF 38, p. 14; ECF 57, p. 8. Sonos claims that the technology at issue was "independently developed" by the Linkplay Defendants and thus the location of Apple, Amazon, and Google is not relevant to the transfer analysis. ECF 110, 32:19-33:9.

The Court agrees with Sonos—at this point, it is merely speculative whether these three companies will even be involved in any potential trial, so they will not be factored into the analysis.

**Location of books and records.** This factor is neutral. This factor tends to be a remnant of the past, and the Court affords it little weight. Books and records are commonly stored digitally and can be easily transmitted electronically to any forum. *Jumara*, 55 F.3d at 879 (consideration of "books and records" factor is "limited to the extent that the files could not be produced in the alternative forum"); *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 571 (D. Del. 2001) ("With new technologies for storing and transmitting information, the burden of gathering and

transmitting documents 3,000 miles is probably not significantly more than it is to transport them 30 miles.").

The Linkplay Defendants argue that this factor weighs in favor of transfer because the relevant physical prototypes of the alleged infringing products are located in the Northern District of California and would be difficult to transport to Delaware because they are fragile.  ECF 38, p. 15; *id.*, Ex. A at ¶ 35; ECF 110, 39:22-40:1.  The Court is not convinced.  This isn't a patent case involving heavy industrial equipment, and careful and cost-effective packaging and shipment of the modules here seems feasible.  Further, the Court has doubts that counsel (all outside of the Northern District of California) and their experts would, in any event, all travel to the Northern District of California for inspections of the prototypes.  As such, this factor is neutral. *Dynamic Data Techs., LLC*, 2020 WL 1915261 at *3 (finding location of books and records factor neutral even though physical samples of the accused products were located in California and Asia).

In addition to the private factors, the Court must also consider these public factors: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policy of the forum; and (6) the trial court's familiarity with the applicable law.  *Jumara*, 55 F.3d at 879-80.

**Enforceability of judgment.**  The parties agree that this factor is neutral. ECF 38, p. 19; ECF 48, p. 20.

**Practical considerations.**  This factor is neutral.  In 1993, this Court observed that "technological advances have substantially reduced the burden of having to litigate in a distant forum." *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993).  The technological advances since 1993 make this even more true today—the Court plans to hold all conferences virtually,

depositions can be held virtually, and discovery will likely be almost exclusively electronic.  The only in-person proceedings will likely be the claim-construction hearing, final pre-trial conference, and trial.  Given that so few civil cases go to trial and many patent cases settle after claim construction, that probably means holding only one in-person hearing.  In light of this, the Court finds this factor to be neutral.

**Relative administrative difficulty.**  This factor weighs against transfer.  As of June 30, 2024, the Northern District of California has more pending cases (15,619 versus 2,222), more pending cases per active judgeship (1,116 versus 556), and a longer median time from filing to trial in civil cases (48.9 versus 32.9 months) than the District of Delaware.  *United States District Courts—National Judicial Caseload Profile*, https://uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2024.pdf.  The District of Delaware has a longer median time from filing to disposition in civil cases (8.4 versus 7.6 months) and less weighted filings (657 versus 521) than the Northern District of California.  *Id.*  On balance, the Court concludes based on these statistics that this Court is less congested than the Northern District of California, so this factor weighs against transfer.  Additionally, the undersigned judge has been designated to preside over this case from another district, specifically to alleviate concerns about court congestion in Delaware.  *Inst. for Env't Health Inc.*, 2024 WL 2208948 at *8.

**Local interest.**  This factor is neutral.  "[P]atent issues do not give rise to a local controversy or implicate local interests."  *TriStrata Tech., Inc. v. Emulgen Lab'ys, Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008).

**Public policy.**  This factor is neutral.  This Court has stated that this factor weighs against transfer when both parties are Delaware corporations, but has also stated that this factor is not applicable in patent cases.  *Rosebud LMS, Inc. v. Salesforce.com, Inc.*, No. 17-1712, 2018 WL 6061343, at *7 (D. Del. Nov. 20, 2018)

(stating "Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts" and finding public policy factor weighed against transfer, but giving it limited weight); *MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 228 (D. Del. 2017) (finding factor inapplicable because the plaintiff brought "federal patent claims which are [] resolved in the same manner and under the same Federal Rules of Civil Procedure and Evidence" regardless of which district decides the case).  Weighing these two principles, this factor is neutral.

**The Court's familiarity with the applicable law in diversity actions.**  The parties agree that this factor is neutral, given that this isn't a diversity case. ECF 38, p. 19; ECF 48, p. 20.

In sum, the Court weighs the *Jumara* factors in a holistic and substantive manner.[6]  Here, the great weight of the factors points to "neutral."  Two factors weigh against transfer (Plaintiff's preference and court congestion) and one weighs for transfer (Defendants' preference).  Considering all factors together and given that a plaintiff's choice of forum should not be lightly disturbed and that the Linkplay Defendants bear the burden on this motion, the Court finds that the Linkplay Defendants haven't tipped the scales for transfer.  Transfer is therefore not appropriate in this case.

*     *     *

---

[6] "Importantly, the *Jumara* analysis is not limited to these explicitly enumerated factors, and no one factor is dispositive."  *Audatex N. Am., Inc.*, 2013 WL 3293611 at *2 (citing *Jumara*, 55 F.3d at 879).  The parties have not identified any additional factors for the Court to consider, and the Court finds no additional factor applies.

For these reasons, this **29th day of October, 2024,** it is hereby **ORDERED** that Linkplay CN's motion to dismiss for lack of jurisdiction and Linkplay US and Linkplay CN's motion to transfer (ECF 37) is **DENIED**.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge